SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Allstate New Jersey Insurance Co. v. Gregorio Lajara (A-70-13) (073511)**

**Argued January 5, 2015 -- Decided July 16, 2015**

**ALBIN, J., writing for a unanimous Court.**

The issue in this appeal is whether a civil defendant sued by an insurance company for violating the Insurance Fraud Prevention Act (IFPA), N.J.S.A. 17:33A-1 to -30, has a right to trial by jury.

In December 2008, plaintiffs Allstate New Jersey Insurance Company and affiliated companies filed a 604-paragraph complaint alleging that sixty-three defendants violated the IFPA. The complaint alleges that defendants engaged in a "broad, multi-faceted scheme to defraud" plaintiffs of $8.14 million in personal injury protection benefits under the New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 to -35. Plaintiffs sought various forms of relief: payment of compensatory damages, treble damages, and attorneys' fees under the IFPA; a declaration that allegedly fraudulent benefits do not have to be paid; disgorgement of benefits paid; and constructive trusts and equitable liens on defendants' assets. Although plaintiffs demanded a jury trial in the complaint, they later moved to withdraw that demand.

The trial court granted plaintiffs' motion to withdraw their jury-trial demand and denied defendants' request for trial by jury. The court determined that State v. Sailor, 355 N.J. Super. 315 (App. Div. 2001), was "the controlling precedent." In that case, the State brought an action under the IFPA against an individual defendant for giving false information to an insurance carrier regarding an automobile accident. The State sought restitution on the claim paid to the defendant. The Appellate Division determined that the plaintiff was not entitled to a jury trial because the Act did not expressly provide such a right and because the remedy at issue was equitable in nature.

Defendants filed a motion for leave to appeal. The Appellate Division granted leave to appeal and affirmed the trial court's denial of defendants' demand of a jury trial. Allstate N.J. Ins. Co. v. Lajara, 433 N.J. Super. 20, 44 (App. Div. 2013). The panel held that, in an insurer's action under N.J.S.A. 17:33A-7, the IFPA contains no express right to a jury. Id. at 38. It also declined to find an implied right from the statute's silence. Ibid. Additionally, the panel found that defendants did not possess a constitutional jury-trial right. Id. at 42.

The Supreme Court granted defendants' motion for leave to appeal.

**HELD:** The right to a civil jury trial provided by Article I, Paragraph 9 of the New Jersey Constitution applies to private-action claims seeking compensatory and punitive damages under the Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 to -30.

1. The right to a jury trial was foremost in the minds of the drafters of New Jersey's first Constitution, which declared "that the inestimable right of trial by jury shall remain confirmed, as a part of the law of this colony, without repeal, forever." N.J. Const. (1776) art. XII. That bedrock principle was reaffirmed in the State's 1844 and 1947 Constitutions, both of which proclaimed that "[t]he right of trial by jury shall remain inviolate." N.J. Const. (1844) art. I, § 7; N.J. Const. (1947) art. I, ¶ 9. The right of a civil jury trial is preserved in the Seventh Amendment to the United States Constitution, U.S. Const. amend. VII, but that guarantee extends only to federal trials. Thus, "the right to a trial by jury in New Jersey must arise under either a statute or the state constitution." In re Envtl. Ins. Declaratory Judgment Actions, 149 N.J. 278, 292 (1997). (pp. 11-14)

2. Neither the Seventh Amendment to the United States Constitution nor New Jersey's constitutional counterpart was ever intended to guarantee a right to a jury trial in all civil cases. The jury-trial right did apply to all common-law "suits in which legal rights were to be ascertained and determined." Curtis v. Loether, 415 U.S. 189, 193 (1974). Under New Jersey's constitutional jurisprudence, the right to a jury trial applies to causes of action -- even statutory causes of action -- that sound in law rather than equity. Federal courts look almost exclusively to whether

the remedy is legal in nature, but New Jersey courts consider not only the nature of the relief -- the remedy -- but also the historical basis for the cause of action. The nature of the remedy, however, "remains the most persuasive factor." Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 589 (2013). (pp. 14-16)

3. Under the IFPA, "[a]ny insurance company damaged as the result of a violation of [the Act] may sue . . . to recover compensatory damages, which shall include reasonable investigation expenses, costs of suit and attorneys fees." N.J.S.A. 17:33A-7(a). The IFPA does not set forth equitable remedies for private-party insurance actions, but that does not preclude insurance companies from seeking equitable remedies available at common law. Like the Consumer Fraud Act, N.J.S.A. 56:8-1 to -109 (CFA), the IFPA does not expressly confer the right to a jury trial. The Court must determine whether the remedies in a private action under the IFPA are legal in nature and whether the cause of action is similar to one recognized under the common law. (pp. 16-18)

4. The IFPA authorizes an insurance company to pursue compensatory and treble damages against a violator. N.J.S.A. 17:33A-7(a), (b). Treble damages are intended to punish, and only partly to compensate, and therefore have the classic features of punitive damages. Compensatory damages, including attorneys' fees and costs, are trebled if the court finds that a defendant engaged in a pattern of violating the IFPA. Because only the first third of a treble-damages award is intended to compensate the victim for actual damages, the remaining award is clearly in the nature of punitive damages. Monetary damages, such as compensatory and punitive damages, are a typical form of legal relief. In contrast, equitable processes "are available only to the party who cannot have a full measure of relief at law." Wood v. N.J. Mfrs. Ins. Co., 206 N.J. 562, 578 (2011). By any measure, the relief available to insurance companies in IFPA actions -- compensatory damages, treble damages, and attorneys' fees and costs -- is legal in nature. (pp. 18-22)

5. To succeed on an IFPA claim, an insurance company must demonstrate that: (1) the defendant "presented" a "written or oral statement"; (2) the defendant knew that the statement contained "false or misleading information"; and (3) the information was "material" to "a claim for payment or other benefit pursuant to an insurance policy or the Unsatisfied Claim and Judgment Fund Law." N.J.S.A. 17:33A-4(a)(1). The insurance company must also prove a fourth element -- that it was "damaged as the result of a violation of [the IFPA]." N.J.S.A. 17:33A-7(a). Those elements permit an insurer to seek money damages, and even treble damages. Attorneys' fees, investigatory costs, and costs of suit are, by definition, compensatory damages under the IFPA, and therefore a successful lawsuit initiated by an insurance company will necessarily involve an award of damages. N.J.S.A. 17:33A-7(a). (pp. 22-24)

6. The Court has no reason to conclude that, in IFPA private-party actions, the Legislature intended a result inconsistent with the demands of the State's Constitution. When the Legislature provides for legal remedies, it can be inferred that it "intended to authorize a jury trial." Zorba Contractors, Inc. v. Housing Authority of Newark, 362 N.J. Super. 124, 138 (App. Div. 2003). The right to a jury trial is implied in the IFPA, just as it is in the CFA. The right to a jury trial under Article I, Paragraph 9 of the New Jersey Constitution is triggered because the IFPA provides legal relief in the form of compensatory and punitive damages and because an IFPA claim is comparable to common-law fraud. (pp. 24-29)

7. The availability of common-law equitable remedies, in addition to legal remedies, cannot extinguish the right to a jury trial. If the jury finds that the insurance companies are entitled to legal remedies because of violations of the IFPA, the resolution of the equitable remedies-- a declaration that fraudulent benefits do not have to be paid, disgorgement of benefits paid, constructive trusts and equitable liens on defendants' assets -- will be guided accordingly. Because the private-party legal claims predominate, the Court need not address Sailor, supra, 355 N.J. Super. 315. In this private-party IFPA action, the right to a jury trial is compelled by Article I, Paragraph 9 of the New Jersey Constitution. Also, the right to a jury trial is implied in the IFPA by the Legislature's choice of legal remedies and by the similarities between an IFPA action and common-law fraud. (pp. 29-31)

The judgment of the Appellate Division is **REVERSED** and the matter is **REMANDED** to the Law Division for proceedings consistent with the Court's opinion.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, PATTERSON, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE ALBIN's opinion. JUSTICE FERNANDEZ-VINA did not participate.**

2

ALLSTATE NEW JERSEY INSURANCE
COMPANY, ALLSTATE INSURANCE
COMPANY, ALLSTATE INDEMNITY
COMPANY, ALLSTATE PROPERTY
AND CASUALTY INSURANCE
COMPANY, ALLSTATE NEW JERSEY
PROPERTY AND CASUALTY
INSURANCE COMPANY AND
ENCOMPASS INSURANCE, f/k/a
CONTINENTAL INSURANCE
COMPANY, and COMMERCIAL
INSURANCE COMPANY OF NEWARK,
NJ,

     Plaintiffs-Respondents,

         v.

GREGORIO LAJARA; PEDRO
GONZALEZ; MILEYDIS T. DIAZ
a/k/a MILLY DIAZ; AWILDA D.
RODRIGUEZ a/k/a AWILDA D.
GONZALEZ; KENNETH J. VIAFORA;
JOSE ORLANDO HERNANDEZ;
FRANCISCA HERNANDEZ;
FRANCISCO CABA; AQUALINA
RAMOS; ASHRAF Y. AZIR;
MUHAMMAD A. SHAMSHAIR;
MICHAEL C. GOLOWSKI; ELVIA
BEDOYA; NYDIA MARTINEZ;
NEREDA ZUNIGA; ALEXANDRA
GALLEGOS; BIBARS KAGHDOU,
D.C.; STEPHEN LOMANTO, D.C.;
DAVID STEPHENS, D.C.; THOMAS
J. BONACUSO, D.C., MICHAEL
CARLESIMO, D.C.; BRYAN
SIEGEL, D.C.; KEITH
LEWANDOWSKI, D.C.; WEI JU;
LUCY LIU; JIANMIN LI, a/k/a
JIAN MIN LI; SHAN S.
NAGENDRA, M.D.; ALEKSANDR
LEVIN, M.D.; MANOJ D.

1

PATHARKAR, M.D.; ALFRED REZK TAWADROUS, M.D.; HOWARD KESSLER, M.D.; NATALIO DAMIEN, M.D.; DAVID WALKER, ESQ.; MEDICO MANAGEMENT CO., INC.; UNION COLLECTIONS, LLC; PLAINFIELD MEDICAL MANAGEMENT, INC.; SPINAL ADJUSTMENT CENTER, P.C. f/k/a SPINAL ADJUSTMENT CENTER, INC.; RAHWAY SPINAL INJURY P.C. f/k/a RAHWAY SPINAL CENTER CORP.; ADVANCED SPINAL CARE, P.C.; MILLENNIUM TOTAL HEALTH, P.C.; ALEVE CHIROPRACTIC, P.C.; IN-LINE CHIROPRACTIC, P.C.; BAYVIEW HEALTH, P.C.; a/k/a BAYVIEW HEALTH SERVICE, P.C.; BOUND BROOK CHIROPRACTIC, P.C.; NEW WAVE CHIROPRACTIC, P.C.; ABSOLUTE CHIROPRACTIC, P.C.; BACK PAIN P.C.; AM PAIN CARE, P.C.; ACUPUNCTURE ACADEMY P.C.; TCM ACUPUNCTURE P.C.; AMERICAN ACUPUNCTURE ACADEMY, P.C.; CONVERY MEDICAL GROUP, P.C.; RARITAN PAIN MANAGEMENT AND REHAB CENTER, P.C.; ASBURY MEDICAL AND REHABILITATION P.C.; PAIN MANAGEMENT ASSOCIATES OF CENTRAL JERSEY, P.A.; BEST HEALTH MEDICAL, P.C.; PERTH AMBOY HEALTH CARE, LLC d/b/a "PERTH AMBOY DIAGNOSTIC IMAGING"; LIBERTY SUPPLIES, L.L.C.; K-MED SERVICES, INC.; PRESTIGE MEDICAL SUPPLIES, LLC; THERAPEUTIC DEVICES, INC.,

     Defendants,

        and

A.P. DIAGNOSTIC IMAGING, INC.
and DR. HARSHAD PATEL,

    Defendants-Appellants.

Argued January 5, 2015 – Decided July 16, 2015

On appeal from the Superior Court, Appellate
Division, whose opinion is reported at 433
N.J. Super. 20 (App. Div. 2013).

Carl A. Salisbury argued the cause for
appellants (Kilpatrick Townsend & Stockton,
attorneys).

Thomas O. Mulvihill argued the cause for
respondents (Pringle Quinn Anzano,
attorneys).

JUSTICE ALBIN delivered the opinion of the Court.

In this appeal, we must decide whether a civil defendant sued by an insurance company for violating the Insurance Fraud Prevention Act (IFPA), N.J.S.A. 17:33A-1 to -30, has a right to trial by jury. The trial court determined that, in an action arising under the IFPA, neither the statutory scheme nor the New Jersey Constitution grants a civil defendant the right to a jury trial. The Appellate Division affirmed. Allstate N.J. Ins. Co. v. Lajara, 433 N.J. Super. 20, 44 (App. Div. 2013).

We now reverse. The right to a civil jury trial is one of the oldest and most fundamental of rights. It predates the founding of our Republic, is enshrined in the Federal Bill of Rights, and is part of the fabric of all three of New Jersey's Constitutions. A jury trial is self-government at work in our

3

constitutional system, and a verdict rendered by one's peers is the ultimate validation in a democratic society.

In determining whether the jury-trial right applies to a statutory cause of action, we assess whether the grant of a jury trial is consistent with our common-law tradition. An IFPA claim meets that standard because compensatory and punitive damages are legal -- not equitable -- in nature and because the elements necessary to prove an IFPA claim are similar to common-law fraud.

By this measure, we conclude that the right to a civil jury trial provided by Article I, Paragraph 9 of the New Jersey Constitution applies to private-action claims seeking compensatory and punitive damages under the IFPA. We also presume that the Legislature, in passing the IFPA, intended the statutory scheme to conform to the Constitution. We therefore remand to the trial court to allow defendants in this case to exercise their right to a jury trial.

I.

A.

In December 2008, plaintiffs Allstate New Jersey Insurance Company and affiliated companies, Encompass Insurance, and Commercial Insurance Company of Newark, New Jersey, filed a 604-paragraph complaint alleging that sixty-three defendants

4

violated the IFPA.[1]  The sixty-three defendants include physicians and chiropractors; medical, imaging, and pain-management practices; medical equipment and billing companies; employees, owners, and shareholders of those practices and companies; and an attorney and unlicensed individuals.

The complaint alleges that defendants engaged in a "broad, multi-faceted scheme to defraud" plaintiffs of $8.14 million in personal injury protection benefits under the New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 to -35. According to the complaint, defendants played different roles and engaged in singular and multiple fraudulent acts in this far-reaching scheme.  Unlicensed defendants provided "purported healthcare services" through companies that concealed their true status.  Defendants provided unnecessary care and prescribed unnecessary medical equipment, engaged in fraudulent testing of patients, misrepresented test results and patients' symptoms, and unlawfully split fees and concealed prohibited self-referrals -- all for the purpose of wrongly securing or enhancing recoveries for claimants or price gouging.  The complaint also contends that some defendants paid fees to

---

[1] Also included as plaintiffs are Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, and Allstate New Jersey Property and Casualty Insurance Company.

individuals who staged accidents, created fraudulent medical records and bills, and recruited persons involved in accidents who suffered either minor or no injuries.

Plaintiffs sought various forms of relief:  payment of compensatory damages, treble damages, and attorneys' fees under the IFPA; a declaration that allegedly fraudulent benefits do not have to be paid; disgorgement of benefits paid; and constructive trusts and equitable liens on defendants' assets.

Although plaintiffs demanded a jury trial in the complaint, they later moved to withdraw that demand.  That motion was opposed by defendants A.P. Diagnostic Imaging, Inc. and Dr. Harshad Patel, who are parties to this appeal, as well as by other defendants.[2]

### B.

The trial court granted plaintiffs' motion to withdraw their jury-trial demand and denied defendants' request for trial by jury.  The court determined that State v. Sailor, 355 N.J. Super. 315 (App. Div. 2001), was "the controlling precedent."

---

[2] The Commissioner of Banking and Insurance, who had earlier intervened in the suit, moved to strike the jury demand as it related to the Commissioner's claims.  See N.J.S.A. 17:33A-7(d) (authorizing Commissioner to join in insurance company's private action, in order to recover civil penalties authorized by N.J.S.A. 17:33A-5).  No party contends that there is a right to a jury trial on the Commissioner's claims.  See State v. Sailor, 355 N.J. Super. 315, 322 (App. Div. 2001).  The Commissioner is not a party to this appeal.

In that case, the State brought an action under the IFPA against an individual defendant for giving false information to an insurance carrier regarding an automobile accident. Id. at 318-19. The State sought restitution on the claim paid to the defendant. Id. at 318. The Appellate Division determined that the plaintiff was not entitled to a jury trial because the Act did not expressly provide such a right and because the remedy at issue was equitable in nature. Id. at 322-23. The trial court ruled that "Sailor makes clear that the issue turns on the fact that the remedies available under the [IFPA] are in the form of restitution, an equitable form of relief," and therefore at common law plaintiffs would not have been entitled to a jury trial.

Defendants filed a motion for leave to appeal.

C.

The Appellate Division granted leave to appeal and affirmed the trial court's denial of defendants' demand of a jury trial. Allstate, supra, 433 N.J. Super. at 27, 44. The panel held that, in an insurer's action under N.J.S.A. 17:33A-7, the IFPA contains no express right to a jury. Id. at 38. It also declined to find an implied right from the statute's silence. Ibid.

Additionally, the panel found that defendants did not possess a constitutional jury-trial right. Id. at 42. The

7

panel acknowledged that, "'[g]enerally, the New Jersey Constitution protects the right of trial by jury in legal, but not equitable, actions.'" Id. at 41 (quoting Ins. Co. of N. Am. v. Anthony Amadei Sand & Gravel, Inc., 162 N.J. 168, 176 (1999)). However, it determined that the insurers' claims under the IFPA more closely resemble an equitable action for which there is no jury-trial right. The panel noted that "[t]he remedy sought 'remains the most persuasive factor.'" Ibid. (quoting Jersey Cent. Power & Light Co. v. Melcar Util. Co. (JCP&L), 212 N.J. 576, 589 (2013)). With that in mind, the panel maintained that the monetary relief "denominated as compensatory damages" under N.J.S.A. 17:33A-7(a) "is in the nature of restitution," which is typically an equitable remedy. Id. at 43. Moreover, based on a historical view of the common law, the panel concluded that a private-party action under the IFPA "is significantly different from legal fraud" and "is more akin to equitable fraud, to which no jury trial right attaches." Ibid. Accordingly, the panel "discern[ed] no constitutional right to a trial by jury for private claims under the [IFPA]." Id. at 44.

This Court granted defendants' motion for leave to appeal.

## II.

### A.

Defendants, Dr. Harshad Patel and A.P. Diagnostic Imaging,

8

Inc., contend that the Appellate Division erred in holding that a defendant in a private action under the IFPA has no right to a jury trial. Defendants point to Zorba Contractors, Inc. v. Housing Authority of Newark, 362 N.J. Super. 124 (App. Div. 2003), in which the Appellate Division found an implied statutory right to a jury trial under the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -109. Defendants maintain that the elements and remedies (compensatory damages, treble damages, and attorneys' fees) in a CFA claim are nearly identical to those in an IFPA claim. They argue that an IFPA claim is more akin to common-law fraud than equitable fraud. They emphasize that in Zorba, supra, 362 N.J. Super. at 138, the Appellate Division classified the CFA remedies as the "hallmark of a legal action." Defendants further stress that in JCP&L, supra, 212 N.J. 576, we adopted Zorba's reasoning for determining when a jury trial is mandated.

                                    B.

    In contrast, plaintiffs argue that the remedies available under the IFPA are equitable in nature and, accordingly, there is no right to a jury trial under the IFPA. They assert that the differences between the IFPA and the CFA make Zorba's analysis inapplicable. Plaintiffs submit that "damages are not an element of a cause of action under the IFPA" and that "the Legislature specifically described the [IFPA's] damages" as a

                                     9

form of restitution, thus signaling that their claim sounds in equity. They highlight that the wording of the IFPA states that "the court" -- not a jury -- makes the fact-finding on the award of treble damages. Additionally, plaintiffs reject the idea that the prior use of jury trials in IFPA cases suggests an implied right to a jury trial. According to plaintiffs, the "entire history of the IFPA" suggests that the statute's drafters wanted to avoid the "delays and inefficiencies" that come with jury trials in combatting insurance fraud. In addition, plaintiffs posit that the complaint made by the State, as an intervenor in the IFPA action, must be decided by the court and therefore combining all claims in a bench trial "will result in numerous procedural efficiencies." Finally, plaintiffs assert that "a right to a jury trial is not constitutionally required because the cause of action available under the IFPA is distinctive from common law fraud."

### III.

Our task is to determine whether the right to a jury trial in a private action brought under the IFPA is implicit in the statutory scheme or, alternatively, is mandated by Article I, Paragraph 9 of the New Jersey Constitution. N.J. Const. art. I, ¶ 9 ("The right of trial by jury shall remain inviolate[.]"). In interpreting a statute or the Constitution, our review is de novo. Farmers Mut. Fire Ins. Co. of Salem v. N.J. Prop.-Liab.

Ins. Guar. Ass'n, 215 N.J. 522, 535 (2013). As such, we owe no deference to the interpretive conclusions of the trial court or Appellate Division. Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012).

IV.

The issue before us is whether defendants in a private action brought under the IFPA have a right to trial by jury. Resolving that issue requires an understanding of the historical development and importance of the jury-trial right in our constitutional scheme.

A.

The right to a jury trial is deeply rooted in the English common law and traces its origins as far back as the Magna Carta. See Duncan v. Louisiana, 391 U.S. 145, 151, 88 S. Ct. 1444, 1448, 20 L. Ed. 2d 491, 497 (1968). The common-law tradition of trial by jury was carried over to the American colonies and, in time, took the form of a fundamental right. Lyn-Anna Props. v. Harborview Dev. Corp., 145 N.J. 313, 318-19 (1996). In the Seventeenth Century, the provinces of West and East Jersey codified the jury-trial right in two separate enactments, one stating that "the tryals of all causes, civil and criminal, shall be heard and decided by the virdict or judgment of twelve honest men of the neighbourhood," The Concessions and Agreements of the Proprietors, Freeholders and

11

Inhabitants of the Province of West New-Jersey, in America, Chap. XXII (1676), and the other stating that "all trials shall be by the verdict of twelve men," East Jersey House of Representatives' 1699 Declaration of Rights and Privileges (1699). In New Jersey, as in the other colonies, the right to trial by jury retained its hold in the years preceding the American Revolution. In its 1774 Declaration of Rights, the first Continental Congress proclaimed, "'the respective colonies [were] entitled to the common law of England, and more especially to the great and inestimable privilege of being tried by their peers.'" Parklane Hosiery Co. v. Shore, 439 U.S. 322, 340 n.3, 99 S. Ct. 645, 656 n.3, 58 L. Ed. 2d 552, 568 n.3 (1979) (Rehnquist, J., dissenting) (quoting 1 Journals of the Continental Congress 69 (1904 ed.)).

One of the precipitating causes of the American Revolution was the British Parliament's passage of Acts that extended the jurisdiction of the admiralty courts "beyond their antient limits thereby depriving [the colonists] of the inestimable right of trial by jury" and thus subjecting the colonists "to the arbitrary decision of a single and dependent judge." Reid v. Covert, 354 U.S. 1, 29 n.51, 77 S. Ct. 1222, 1237 n.51, 1 L. Ed. 2d 1148, 1170 n.51 (1957) (quoting Thomas Jefferson, 2 Journals of the Continental Congress 132 (Ford ed.)). Indeed, one of the specific grievances listed in the Declaration of

Independence was that the Crown had deprived the colonists "in many cases, of the benefits of Trial by Jury."  The Declaration of Independence para. 3 (U.S. 1776).

The right to trial by jury was foremost in the minds of the drafters of New Jersey's first Constitution.  Ratified on July 2, 1776, just two days before the Declaration of Independence, the New Jersey Constitution declared "that the inestimable right of trial by jury shall remain confirmed, as a part of the law of this colony, without repeal, forever."  N.J. Const. (1776) art. XII; see Wood v. N.J. Mfrs. Ins. Co., 206 N.J. 562, 574 (2011).  That bedrock principle was reaffirmed in our 1844 and 1947 Constitutions, both of which proclaimed that "[t]he right of trial by jury shall remain inviolate."  N.J. Const. (1844) art. I, § 7; N.J. Const. (1947) art. I, ¶ 9.

The right of a civil jury trial is preserved in our national charter as the Seventh Amendment to the United States Constitution.[3]  U.S. Const. amend. VII.  The Seventh Amendment's "guarantee of a jury trial in civil cases" extends only to

---

[3] The Seventh Amendment provides:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.
>
> [U.S. Const. amend. VII.]

federal trials because the Seventh Amendment has not been made applicable to the States through the Fourteenth Amendment's Due Process Clause. See In re Application of LiVolsi, 85 N.J. 576, 587 n.7 (1981). Thus, "the right to a trial by jury in New Jersey must arise under either a statute or the state constitution." In re Envtl. Ins. Declaratory Judgment Actions, 149 N.J. 278, 292 (1997).

B.

Neither the Seventh Amendment nor New Jersey's constitutional counterpart was ever intended to guarantee a right to a jury trial in all civil cases. Thus, "the thrust of the [Seventh] Amendment was to preserve the right to jury trial as it existed in 1791" -- the time of the Amendment's ratification. Curtis v. Loether, 415 U.S. 189, 193-94, 94 S. Ct. 1005, 1007, 39 L. Ed. 2d 260, 265 (1974). At that time, the right to a jury trial did not extend to matters falling within the jurisdiction of the admiralty courts or equity courts, "where equitable rights alone were recognized, and equitable remedies were administered." Id. at 193, 94 S. Ct. at 1008, 39 L. Ed. 2d at 265-66 (internal quotation marks omitted). The jury-trial right did apply to all common-law "suits in which legal rights were to be ascertained and determined." Ibid. (internal quotation marks omitted). Not surprisingly, federal and New Jersey jurisprudence are in agreement on this point.

14

Lyn-Anna Props., supra, 145 N.J. at 318-19.  The historical annals do not suggest that the drafters of the 1776 New Jersey Constitution and the 1791 Federal Bill of Rights had different conceptions of the scope of the right to a civil jury trial.

The United States Supreme Court has given an expansive interpretation of the Seventh Amendment, finding that the right to a jury trial extends "beyond the common-law forms of action recognized" at the time of the Constitution's ratification to new statutory causes of action, provided those statutes "create[] legal rights and remedies, enforceable in an action for damages in the ordinary courts of law."  Curtis, supra, 415 U.S. at 193-94, 94 S. Ct. at 1007-08, 39 L. Ed. 2d at 265-66.

C.

Under New Jersey's constitutional jurisprudence, the right to a jury trial applies to causes of action -- even statutory causes of action -- that sound in law rather than equity.  JCP&L, supra, 212 N.J. at 589.  The federal courts look almost exclusively to whether the remedy is legal in nature in determining whether a party has a right to a jury.  Curtis, supra, 415 U.S. at 197, 94 S. Ct. at 1010, 39 L. Ed. 2d at 268 (stating that in Title VII cases compensatory and punitive damages constitute legal, not equitable, relief).

New Jersey courts have taken a slightly different approach, considering not only the nature of the relief -- the remedy --

15

but also the historical basis for the cause of action. JCP&L, supra, 212 N.J. at 589; Wood, supra, 206 N.J. at 575. This second factor examines whether the cause of action resembles one that existed in common law. See JCP&L, supra, 212 N.J. at 593-94; Zorba, supra, 362 N.J. Super. at 139-40. Nevertheless, the nature of the remedy "'remains the most persuasive factor.'" JCP&L, supra, 212 N.J. at 589 (quoting Weinisch v. Sawyer, 123 N.J. 333, 344 (1991)). The weight given to the remedy makes it unlikely that our courts and federal courts will diverge in the types of cases in which a jury trial would be available.

V.

A.

The IFPA was enacted to "confront aggressively the problem of insurance fraud." N.J.S.A. 17:33A-2. In pursuit of that goal, the "IFPA interdicts a broad range of fraudulent conduct." Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 172 (2006).

The IFPA provides, in relevant part, that a "person or practitioner" violates the Act when he

> (1) [p]resents or causes to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy . . . knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or
>
> (2) [p]repares or makes any written or oral statement that is intended to be presented to

16

any insurance company, . . . in connection with, or in support of or opposition to any claim for payment or other benefit pursuant to an insurance policy . . . knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or

(3) [c]onceals or knowingly fails to disclose the occurrence of an event which affects any person's initial or continued right or entitlement to (a) any insurance benefit or payment or (b) the amount of any benefit or payment to which the person is entitled[.]

[N.J.S.A. 17:33A-4(a)(1), (2), (3).]

The IFPA authorizes two separate causes of action to enforce the statutory scheme -- one a State action brought by the Commissioner of Banking and Insurance, N.J.S.A. 17:33A-5,[4] and the other a private civil action brought by insurers "damaged as the result of a violation of any provision of [the IFPA]," N.J.S.A. 17:33A-7. The right to a jury trial in a private civil action is the only issue in this case.

Under the IFPA, "[a]ny insurance company damaged as the result of a violation of [the Act] may sue . . . to recover compensatory damages, which shall include reasonable

---

[4] The IFPA permits the Commissioner to bring a civil action seeking monetary penalties, ranging from "not more than $5,000 for the first violation, $10,000 for the second violation and $15,000 for each subsequent violation"; "restitution to any insurance company or other person who has suffered a loss as a result of a[n] [IFPA] violation"; and attorneys' fees and costs. N.J.S.A. 17:33A-5.

17

investigation expenses, costs of suit and attorneys fees."
N.J.S.A. 17:33A-7(a).  Moreover, an insurance company "shall recover treble damages if the court determines that the defendant has engaged in a pattern of violating [the IFPA]."
N.J.S.A. 17:33A-7(b).  The IFPA does not set forth equitable remedies for private-party insurance actions.  That, however, does not preclude insurance companies from seeking equitable remedies available at common law.  See Brenner v. Berkowitz, 134 N.J. 488, 516 (1993) (stating that "courts are not limited to the statutory remedies, but have a wide array of equitable remedies available to them").

Like the Consumer Fraud Act, N.J.S.A. 56:8-1 to -109, the IFPA does not expressly confer the right to a jury trial.  The absence of express language is just the start of the analysis.  Because we presume that the Legislature intended to act in conformity with the Constitution, the statutory and constitutional analysis is closely aligned.  We must determine whether the remedies in a private action under the IFPA are legal in nature and whether the cause of action is similar to one recognized under the common law.

B.

We begin by examining the "'the most persuasive factor'" -- the remedy available to insurance companies.  See JCP&L, supra, 212 N.J. at 589 (quoting Weinisch, supra, 123 N.J. at 344).  The

18

IFPA authorizes an insurance company to pursue compensatory and treble damages against a violator. N.J.S.A. 17:33A-7(a), (b). Under the IFPA, "compensatory damages" include not only actual damages, but also "reasonable investigation expenses, costs of suit and attorneys fees." N.J.S.A. 17:33A-7(a). Treble damages are intended to punish, and only partly to compensate, and therefore have the classic features of punitive damages. Liberty Mut., supra, 186 N.J. at 185 (noting that purpose of treble damages under Consumer Fraud Act is "to punish the wrongdoer" (internal quotation marks omitted)). Under the IFPA, compensatory damages, including attorneys' fees and costs, are trebled "if the court determines that the defendant has engaged in a pattern of violating th[e] [A]ct." N.J.S.A. 17:33A-7(a), (b). Because only the first third of a treble-damages award is intended to compensate the victim for actual damages, the remaining award is clearly in the nature of punitive damages. Wanetick v. Gateway Mitsubishi, 163 N.J. 484, 494-96 (2000) (indicating that award of treble damages under Consumer Fraud Act is form of punitive damages); Zorba, supra, 362 N.J. Super. at 138 (same).

Monetary damages, such as compensatory and punitive damages, are a typical form of legal relief -- "the traditional form of relief offered in the courts of law." Curtis, supra, 415 U.S. at 196-97, 94 S. Ct. at 1009-10, 39 L. Ed. 2d at 267-

19

68; see also Wood, supra, 206 N.J. at 578 (characterizing claim for "money damages" as "invok[ing] solely legal and not equitable relief"); Zorba, supra, 362 N.J. Super. at 138 ("[T]he forms of relief specifically authorized by N.J.S.A. 56:8-19 [of the Consumer Fraud Act] are monetary -- compensatory damages, trebling of those damages and attorneys fees -- which is a hallmark of a legal action.").

In contrast, equitable processes "'are available only to the party who cannot have a full measure of relief at law.'" Wood, supra, 206 N.J. at 578 (quoting Bolte v. Rainville, 138 N.J. Eq. 508, 512 (E. & A. 1946)). "Equitable remedies 'are distinguished for their flexibility, their unlimited variety, their adaptability to circumstances . . . . [T]he court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties.'" US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 476 (2012) (quoting Sears, Roebuck & Co. v. Camp, 124 N.J. Eq. 403, 411-12 (E. & A. 1938)). A few examples of equitable actions are specific performance of a contractual obligation, partition, rescission of a contract, labor-strike injunctions, quiet-title matters, declarations of incapacity, and injunctive restraints of a nuisance. See generally William A. Dreier & Paul A. Rowe, Guidebook to Chancery Practice in New Jersey (8th ed. 2012).

20

By any measure, the relief available to insurance companies in IFPA actions -- compensatory damages, treble damages, and attorneys' fees and costs -- is legal in nature.

C.

In determining the right to a jury trial, the other prong of our analysis is whether the statutory cause of action authorized by the IFPA is comparable to an action known at common law.  See JCP&L, supra, 212 N.J. at 593-96 (comparing claim filed pursuant to Underground Facility Protection Act (UFPA), N.J.S.A. 48:2-73 to -91, to common-law negligence cause of action); Zorba, supra, 362 N.J. Super. at 139-40 (comparing CFA claim to common-law fraud action).

In JCP&L, supra, we found that a cause of action for property damages arising under a provision of the Underground Facility Protection Act, N.J.S.A. 48:2-80(d), was similar to common-law negligence because it "impose[d] liability on the excavator for any negligent damage to an operator's underground facility."  212 N.J. at 583, 593-96 (emphasis added).  We concluded that the Act's requirement that property-damage claims of less than $25,000 be submitted for mandatory, binding arbitration to the Office of Dispute Settlement within the Office of the Public Defender violated New Jersey's constitutional right to a jury trial.  Id. at 583-84, 600.  We reached that conclusion because the statutory cause of action

21

was based on "principles of common-law negligence" and provided for monetary damages.  Id. at 593-94, 596.  We thus held that "[t]he Legislature was not at liberty to ignore the right to a civil jury trial for property damages when enacting the [Underground Facility Protection Act]."  Id. at 596.

In JCP&L, supra, 212 N.J. at 592-93, we cited favorably to Zorba, supra, 362 N.J. Super. at 128-30, in which the Appellate Division held that private-party claimants have a right to a jury trial when seeking damages under the CFA, N.J.S.A. 56:8-19.  In Zorba, supra, the Appellate Division concluded that, "even though the Legislature did not specifically refer to the right to a jury trial," that right was implied in private actions under the CFA because the relief authorized was "legal in nature."  362 N.J. Super. at 138-39.  That conclusion was buttressed "by the close relationship between the private cause of action [under the CFA] and common-law fraud."  Id. at 139.  Significantly, we have observed that "[t]he closest statutory analogue to [the] IFPA in New Jersey is the Consumer Fraud Act."  Liberty Mut., supra, 186 N.J. at 176.

VI.

A.

A private-party action brought under the IFPA resembles a cause of action for common-law fraud.  The elements of common-law fraud are "(1) a material misrepresentation of a presently

22

existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Banco Popular N. Am. v. Gandi, 184 N.J. 161, 172-73 (2005) (internal quotation marks omitted).

To succeed on an IFPA claim, an insurance company must demonstrate that: (1) the defendant "presented" a "written or oral statement"; (2) the defendant knew that the statement contained "false or misleading information"; and (3) the information was "material" to "a claim for payment or other benefit pursuant to an insurance policy or the Unsatisfied Claim and Judgment Fund Law." N.J.S.A. 17:33A-4(a)(1). The insurance company must also prove a fourth element -- that it was "damaged as the result of a violation of [the IFPA]." N.J.S.A. 17:33A-7(a). The presence of those elements permits an insurer to seek money damages, and even treble damages if "the defendant has engaged in a pattern of violating [the IFPA]." N.J.S.A. 17:33A-7(a), (b). Notably, attorneys' fees, investigatory costs, and costs of suit are, by definition, compensatory damages under the IFPA, and therefore a successful lawsuit initiated by an insurance company will necessarily involve an award of damages. N.J.S.A. 17:33A-7(a).

The only element of a claim for common-law fraud absent from an IFPA claim is reliance by the plaintiff on the false

23

statement.  Although an IFPA claim does not precisely match all of the elements of common-law fraud, neither does it match all of the elements of equitable fraud.  Equitable fraud does not require proof that a defendant knew of the falsity of a statement, Jewish Ctr. of Sussex Cnty. v. Whale, 86 N.J. 619, 624-25 (1981) -- an element that must be established in a private-action claim under the IFPA.[5]

Perfect alignment between the elements of an IFPA claim and common-law fraud is not necessary to trigger the right to a jury trial.  As the Appellate Division pointed out in Zorba, supra: a "noteworthy difference between the [Consumer Fraud Act and common-law fraud] causes of action is that 'common law fraud requires proof of reliance while consumer fraud requires only proof of a causal nexus between the concealment of the material fact and the loss.'"  362 N.J. Super. at 139 (quoting Varacallo v. Mass. Mut. Life Ins. Co., 332 N.J. Super. 31, 43 (App. Div. 2000)).  Nevertheless, a jury trial is required in a consumer-fraud case despite the lack of complete symmetry between a CFA claim and a common-law fraud claim.

B.

---

[5] In a claim of equitable fraud, a plaintiff must only prove: "(1) a material misrepresentation of a presently existing or past fact; (2) the maker's intent that the other party rely on it; and (3) detrimental reliance by the other party."  First Am. Title Ins. Co. v. Lawson, 177 N.J. 125, 136-37 (2003) (internal quotation marks omitted).

24

The historical record of the early Republic suggests that those who secured the right to a jury trial in New Jersey's 1776 Constitution -- as well as this State's two subsequent Constitutions -- did not intend for that right to be given a crabbed interpretation. New Jersey's 1776 Constitution was drafted at a time when Acts passed by the British Parliament depriving colonists of their time-honored jury-trial rights were of recent memory. The declaration in that first Constitution that "the inestimable right to trial by jury shall remain confirmed . . . without repeal, forever" was a promise to the people and a message to lawmakers. The State's subsequent Constitutions have reinforced that original declaration.

The plaintiff insurance companies claim that the drafters of the IFPA wanted to avoid the "delays and inefficiencies" of jury trials. To be sure, other means of trying cases are more expeditious and efficient than a jury trial. But those who gave us the guarantee of trial by jury had their eye on a higher value -- the validation that comes from a judgment of one's peers. We reject the insurance companies' argument that a jury-trial right is not implied in a private-party IFPA action.

We presume that the Legislature is aware that New Jersey's jury-trial right attaches to statutory actions that confer legal remedies and resemble actions in common law. See Zorba, supra, 362 N.J. Super. at 138-39. In other words, we will presume, as

25

we must, that the Legislature intended to conform to the Constitution.  See Gallenthin Realty Dev., Inc. v. Borough of Paulsboro, 191 N.J. 344, 359 (2007) (noting presumption that "Legislature acted with existing constitutional law in mind and intended the statute to function in a constitutional manner" (internal quotation marks omitted)).

We have no reason to conclude that, in IFPA private-party actions, the Legislature intended a result inconsistent with the demands of our State Constitution.  When the Legislature provides for legal remedies, it can be inferred that it "intended to authorize a jury trial."  Zorba, supra, 362 N.J. Super. at 138; see also Lorillard v. Pons, 434 U.S. 575, 583, 98 S. Ct. 866, 871, 55 L. Ed. 2d 40, 47 (1978) ("We can infer . . . that by providing specifically for 'legal' relief, Congress knew the significance of the term 'legal,' and intended that there would be a jury trial . . . .").

The Legislature clearly understands the high, preferred place of the right of trial by jury, as is clear from its response to our decision in Shaner v. Horizon Bancorp., 116 N.J. 433 (1989).  In Shaner, supra, the Court had to determine whether, in the absence of express language granting the right to a jury trial in a private-action case, such a right was implied in the language of the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49.  116 N.J. at 446.  The LAD provided for

26

compensatory and punitive damages as well as equitable relief for a victim of discrimination. N.J.S.A. 10:5-17. The Court found no historical corollary in the common law to a LAD claim and ultimately concluded, based on its analysis, that neither the statute nor the New Jersey Constitution compelled a jury trial in private-action LAD cases. Shaner, supra, 116 N.J. at 446, 455.

Seven months after the Shaner decision, the Legislature amended the LAD to provide the right to a jury trial in private-party LAD actions. L. 1990, c. 12, § 2 (codified as amended at N.J.S.A. 10:5-13). The swiftness of the Legislature's reaction to this Court's decision leads to the inference that the amendment was curative, intended to express that the Legislature actually meant to confer a jury-trial right despite its failure to expressly say so. See 1A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction, § 22:31, at 375 (7th ed. 2009) (noting that when amendment is expeditiously adopted to overturn judicial interpretation of statute, courts may "logically conclude that a[n] amendment was adopted to make plain what the legislation had been all along from the time of the statute's original enactment").

We find that the right to a jury trial is implied in the IFPA, just as it is in the CFA. See Zorba, supra, 362 N.J. Super. at 138-39. In summary, the right to a jury trial under

27

Article I, Paragraph 9 of the New Jersey Constitution is triggered because the IFPA provides legal relief in the form of compensatory and punitive damages and because an IFPA claim is comparable to common-law fraud.

C.

We reject Allstate's argument that the Legislature did not intend the jury to act as the fact-finder in an IFPA case because N.J.S.A. 17:33A-7(b) states that the claimant "shall recover treble damages if the court determines that the defendant has engaged in a pattern of violati[ons]." (Emphasis added). First, the statute does not consign to the "court" the determination of facts for actual damages. Second, the term "court" is not inconsistent with the jury serving as fact-finder. See Curtis, supra, 415 U.S. at 189, 198, 94 S. Ct. at 1006, 1010, 39 L. Ed. 2d at 263, 268-69 (stating that Seventh Amendment jury right applies to Section 812 of Civil Rights Act of 1968, 42 U.S.C. § 3612, even though statute grants "court" ability to "grant relief, as it deems appropriate"); Sibley v. Fulton Dekalb Collection Serv., 677 F.2d 830, 832-33 (11th Cir. 1982) ("In this case, we likewise choose to interpret the word 'court' to encompass trial by both judge and jury. This interpretation serves to avoid the serious constitutional questions that would be raised under the seventh amendment if we adopted a construction of the [Fair Debt Collection Practices]

28

Act that prohibited trial by jury."); Rucker v. Wabash R.R. Co., 418 F.2d 146, 152 (7th Cir. 1969) ("The term 'court' need not always be construed as referring to the judge in the performance of his duties.  It also has an institutional meaning and may sometimes refer to the deliberative body of jurors.").

Thus, we cannot conclude that the Legislature intended non-jury trials because of the singular reference to "court" in reference to trebling damages.

### D.

We do not agree with plaintiffs that the statutory legal claims they advanced are ancillary to their equitable claims -- equitable claims that do not rise under the IFPA.  The availability of common-law equitable remedies, in addition to legal remedies, cannot extinguish the right to a jury trial.  If the jury finds that the insurance companies are entitled to legal remedies because of violations of the IFPA, the resolution of the equitable remedies -- a declaration that fraudulent benefits do not have to be paid, disgorgement of benefits paid, constructive trusts and equitable liens on defendants' assets -- will be guided accordingly.  "When equitable claims or defenses are lodged in what is predominantly a dispute at law, and when the claims may be viewed separately without fear of inconsistent determinations, the court must parse the equitable issues from the legal issues presented to the jury."  Sun Coast Merch. Corp.

29

v. Myron Corp., 393 N.J. Super. 55, 86 (App. Div. 2007), certif. denied, 194 N.J. 270 (2008).  Here, the "ancillary equitable issues may well be blazed by the jury's resolution of the legal issues."  See ibid.  That is true also of the ancillary claims filed by the Commissioner of Banking and Insurance for violations of the IFPA regarding administrative penalties to be imposed.  See N.J.S.A. 17:33A-7(d) ("[T]he commissioner may join in [an insurer's] action for the purpose of seeking judgment for the payment of a civil penalty authorized under [N.J.S.A. 17:33A-5].").  Because the private-party legal claims predominate, we need not address Sailor, supra, 355 N.J. Super. 315, which denied the right to a jury trial for an IFPA action brought by the State seeking administrative penalties.

Accordingly, the jury will decide those issues that fall within its domain, and the court those issues falling within its compass.

E.

Last, a jury trial in an IFPA action is not a recent advent or a break from a long-accepted practice of bench trials.  IFPA claims have been tried before juries since at least 1994.  See, e.g., Liberty Mut., supra, 186 N.J. at 165-66 (determining proper standard of proof in private action brought under IFPA on appeal following jury trial and remanding case to Law Division, which conducted second jury trial); Bldg. Materials Corp. of Am.

30

v. Allstate Ins. Co., 424 N.J. Super. 448, 487 (App. Div.) (upholding jury charge given by trial court in private IFPA claim), certif. denied, 212 N.J. 198 (2012); Harleysville Ins. Co. v. Diamond, 359 N.J. Super. 34, 36 (Law Div. 2002) (discussing standard of proof in jury trial proceeding under IFPA); Thomas v. N.J. Ins. Underwriting Ass'n, 277 N.J. Super. 630, 633 (Law Div. 1994) (reviewing IFPA jury charge). The Legislature's acquiescence to this practice gives some indication of its intent to allow jury trials in private-party actions.

## VII.

For the reasons expressed, in this private-party IFPA action, the right to a jury trial is compelled by Article I, Paragraph 9 of the New Jersey Constitution. We also find that the right to a jury trial is implied in the IFPA by the Legislature's choice of legal remedies and by the similarities between an IFPA action and common-law fraud. Accordingly, we reverse the Appellate Division and remand to the Law Division for proceedings consistent with this opinion.


CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, PATTERSON, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE ALBIN's opinion. JUSTICE FERNANDEZ-VINA did not participate.

SUPREME COURT OF NEW JERSEY

NO.   ___A-70___                          SEPTEMBER TERM 2013

ON APPEAL FROM          Appellate Division, Superior Court

ALLSTATE NEW JERSEY INSURANCE
COMPANY, ET AL.,

    Plaintiffs-Respondents,

        v.

GREGORIO LAJARA, ET AL.,

    Defendants,

        and

A.P. DIAGNOSTIC IMAGING, INC.
and DR. HARSHAD PATEL,

    Defendants-Appellants.

DECIDED          July 16, 2015
                 Chief Justice Rabner                  PRESIDING
OPINION BY          Justice Albin
CONCURRING/DISSENTING OPINIONS BY
DISSENTING OPINION BY

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | -------------------- | -------------------- |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |