**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3291-18

TEACH SOLAIS NJ, LLC,

      Plaintiff-Appellant,

v.

RIVKA NAGEL,

      Defendant-Respondent,

and

MOHAMMED HOSSAIN, and
WELLS FARGO BANK, NA,

      Defendants.

_____

Submitted March 25, 2020 – Decided April 15, 2021

Before Judges Fuentes, Mayer and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Atlantic County, Docket No. C-000066-17.

Haviland Hughes and Daniel J. Gallagher, attorneys for appellant (Donald E. Haviland, Jr. and Daniel J. Gallagher, on the briefs).

Reger Rizzo & Darnall LLP, attorneys for respondent (Richard M. Darnall, on the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

Plaintiff Teach Solais NJ, LLC, a commercial real estate developer, sought to purchase a property on South Trenton Avenue in Atlantic City that was owned by Mohammed Hossain. At the same time, Wells Fargo Bank, which held a mortgage on the property, had commenced foreclosure proceedings against Hossain. Because a sheriff's sale had not yet taken place, Hossain still had title to the property when he interacted with Teach Solais. Hossain thus listed the property as a short sale with real estate agent Rivka Nagel, an associate of Berkshire Hathaway HomeServices Fox & Roach, Realtors.

Teach Solais responded to the listing and submitted two offers to purchase the property, each accompanied by contracts, which were both rejected by Hossain. The property was eventually sold at a sheriff's sale where Teach Solais opted not to submit a bid. Instead, Teach Solais decided to file a civil action in the Chancery Division, General Equity Part against Hossain, Nagel, and Wells Fargo Bank seeking both equitable and compensatory relief.

Teach Solais alleged that Nagel listed the property for $89,900. Based on this listing, it submitted "an offer to purchase the property for $100,000.00 with

2

an escalation clause up to $200,000.00." Teach Solais claimed that because the property was listed as a short sale, Hossain was required to submit "the highest and best offer" to Wells Fargo for approval. Despite this, Teach Solais alleged that "Hossain misrepresented that another offer had been submitted to Wells Fargo."

Based on these allegations, Teach Solais sought equitable relief in the form of specific performance directing defendants to convey title to the property to plaintiff; compensatory damages from Nagel for tortious interference with contract; and compensatory and punitive damages against Wells Fargo based on common law fraud. Contemporaneous with this civil action, Teach Solais also filed a notice of lis pendens[1] on the property. The court granted Wells Fargo's motion for summary judgment and dismissed all the claims against it. Hossain did not file an answer to plaintiff's complaint nor appear at any stage of the litigation.

Nagel filed a responsive pleading and after engaging in discovery, moved for summary judgment seeking the dismissal of Teach Solais' claims based on

---

[1] A notice of lis pendens filed pursuant to N.J.S.A. 2A:15-6 can be filed only in an action that affects the title to real estate. The statute also makes clear that "[n]o notice of lis pendens shall be filed . . . in an action to recover a judgment for money or damages only."

tortious interference with contract and common law fraud. The motion came for oral argument before Judge Michael J. Blee on March 15, 2019. The judge granted Nagel's motion for summary judgment and dismissed the case as a matter of law in an order dated March 18, 2019. Judge Blee explained the basis for his ruling in a Memorandum of Opinion attached to the order.

In this appeal, Teach Solais argues the motion judge erred when he held that it could not prove its tortious interference with contract and common law fraud claims without a real estate expert to: (1) establish the standard of care within the industry; and (2) explain how Nagel allegedly breached this standard under the material facts of this case. Alternatively, Teach Solais argues the motion judge erred when he ruled the common knowledge doctrine did not apply. After considering the record presented by the parties and applying the relevant standard of review, we affirm substantially for the reasons expressed by Judge Blee.

## I.

These are the salient facts. On June 27, 2017, prior to the sheriff's sale, Hossain listed the property as a short sale at $89,000 with Berkshire Hathaway HomeServices Fox & Roach, Realtors. Hossain received an offer of $79,000 from Shahin Alam and agreed to sell him the property. The form of contract

4

approved by the New Jersey Real Estate Commission and used by Nagel in this case contained the following two relevant provisions:

SHORT SALE:

A "Short Sale" is a transaction for the sale and purchase of real property where the Purchase Price is less than the amount required to pay off the liens on the real property, such as mortgages, judgments, taxes, homeowner or condominium association fees, assessments, as well closing costs, including but not limited to brokerage commissions, realty transfer fee and attorneys' fees. This transaction is or may be a Short Sale.

CONTINGENCY OF APPROVAL FROM LIEN HOLDERS OF SHORT SALE:

The Contract is subject to the written consent by the holders of certain liens on the Property (the "Designated Lien Holders") to accept less than the amount owed to them in order to release their liens, thereby allowing a closing to occur. If such consent(s) is not obtained, Seller will be unable to convey title to Buyer in accordance with Section 11 of the Contract. The Designated Lien Holders and the approximate amounts of their liens are as follows: [The space provided in the contract following this provision was left blank.]

On June 29, 2017, Teach Solais made a $100,000 offer to Hossain in the form of a contractual agreement that contained a price escalation addendum in which the offer would increase by $10,000 over any next offer, until it reached a maximum of price of $200,000. Christine Castellani, a licensed real estate

5

agent and broker affiliated with Balsley Losco Realty, represented Teach Solais at this stage of negotiations. Teach Solais' attorney drafted the contract and conveyed the second and final offer of purchase made by Teach Solais. Although Nagel was the real estate agent who represented Hossain in these short sale negotiations, paragraph twenty-nine of the contract entitled "Real Estate Commission" provided: "The Seller agrees to pay a commission of [six percent] to and [sic] Balsley Losco Realty in equal shares for their services in effecting this sale, which the Seller agrees to pay at the time of final settlement with the passing of the deed."

Furthermore, the contract that Teach Solais' attorney drafted also contained the following self-executing termination clause:

> If the Seller has not executed and delivered this Agreement to the Buyer after three (3) days from the date of delivery of this Agreement to the Seller, then this agreement shall be considered null and void and the Buyer shall be entitled to the immediate return of all deposit monies held by the escrow agent without liability to either party for releasing such funds. Buyer shall also be entitled to the immediate return of all copies of the Agreement.

A-3291-18

During the litigation, Nagel's counsel deposed Teach Solais' attorney[2] and specifically questioned him about the intent of this self-executing clause:

> Q. So there is a three-day self-executing paragraph where it's null and void if you do not get it back signed from the seller within three days of the seller's receipt, correct?
>
> A. That's what it says. Yep.
>
> Q. So was your intent with this paragraph, because you drafted it, if you don't get it back in three days signed by the seller, contract is null and void?
>
> A. Intent was to get the seller to respond within three days.
>
> Q. Right. But if he doesn't, it's null and void?
>
> A. That's what it says.
>
> Q. And you drafted it?
>
> A. I did.

Hossain rejected Teach Solais' second and final offer. Teach Solais' litigation attorney questioned Nagel directly about Hossain's rejection of this offer in the course of her deposition.

> Q. Have you ever seen this document before?

---

[2] Because an attorney cannot represent a litigant if he or she is also a fact witness in the case, Teach Solais retained different counsel to represent its interests in this litigation before the General Equity Part. <u>See</u> RPC 3.7

A-3291-18

A. Yes.

Q. Can you tell me what it is?

A. That's an agreement that I got from Christine [Castellani].

Q . And on the back of that agreement, do you see that there is an escalation clause?

A. Sure. Yes.

Q. And can you tell me what the escalation clause says?

A. Any offer comes, there will be 10,000 more.

Q. And the initial offer was for how much?

A. A hundred thousand.

Q. And it's dated June 29th, 2017; is that when you received it.

A. I guess. I don't remember, but if it says so. I don't recall when. Probably she sent it immediately, as I know her.

Q. When did you present this to the seller?

A. I called the seller, told him to come to my office.

Q. On the same day? On June 29th, 2017?

A. He didn't come immediately. This was a weekend or something. I don't remember. And he said from where, from who. I told him from Teach Solais. He said, "Oh." He said, "Oh, that's one I don't want." I don't know why.

8

Q. Did he explain to you why he didn't want the contract for more money?

A. I called him. I called Pinky. I said, "Pinky, could you please come." And she came. I said, Pinky, this guy, I told her what's happened, he doesn't want this. So I really I tried to. And I ask him a hundred times why. He said I don't want to discuss about it. He had -- he spoke to -- he called the gentleman Mr. Ron, called him a couple times. I don't know what was said, what he was offering to him. He said something that's not acceptable to him at all.

Q. So Mr. Hossain said it was unacceptable to him?

A. Yes. I don't know why.

Despite not having a fully executed contract with Hossain, which included a self-executing three-day termination clause that by this time had nullified any alleged agreement, Teach Solais filed its initial complaint in the Chancery Division on September 6, 2017. In this civil action Teach Solais sought the equitable relief of specific performance against Hossain, and compensatory and punitive damages against Nagel based on tortious interference with contract and common law fraud. On September 12, 2017, Teach Solais filed a notice of lis pendens on the property.

On September 23, 2017, Nagel notified Teach Solais' real estate agent Christina Castellani that the property was again available. Teach Solais'

9

attorney again submitted a form of contract, which contained the same three-day self-executing termination clause. Hossain rejected the offer, both orally and in a written statement dated October 3, 2017. On that same date, Hossain entered into a contract with MASA Investment, LLC, for the sale of the property in the amount of $105,000. Hossain also signed the New Jersey Realtors Addendum Regarding Possible Short Sales, which disclosed that Chase Bank had a lien on the property in the amount of $300,623.68.

This second potential sale was also nullified. The property was sold at a sheriff's sale held on January 18, 2018, for $81,000.00. A representative of Teach Solais did not attend the sheriff's sale nor bid on the property. Its representative claimed he was not aware that the property was scheduled to be sold at a sheriff's sale. Teach Solais' real estate agent did not inform it that the property was scheduled for a sheriff's sale.

## II.

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged" and the party seeking this relief "is entitled to a judgment or order as a matter of law." R. 4:46-2(c). Thus, to defeat a motion for summary

A-3291-18

judgment, the opposing party must do more than merely "point[] to any fact in dispute" to establish a genuine issue of material fact.  Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995).  As Justice Coleman noted in Brill, if the party opposing the summary judgment motion

> offers . . . only facts which are immaterial or of an insubstantial nature, a mere scintilla, "fanciful, frivolous, gauzy or merely suspicious," he will not be heard to complain if the court grants summary judgment, taking as true the statement of uncontradicted facts in the papers relied upon by the moving party, such papers themselves not otherwise showing the existence of an issue of material fact.
>
> [Ibid (quoting Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75 (1954)).]

As an appellate court, we review a summary judgment decision by the same standard that governs the motion judge's determination.  RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)).  That is, we review the evidence in the record, including all legitimate inferences therefrom, in the light most favorable to the non-moving party.  In this light, we discern no legal or factual basis to disagree with Judge Blee's decision to grant Nagel's motion for summary judgment and dismiss this complaint against her as a matter of law.

11

A party seeking compensatory relief based on tortious interference with a contract is required to present some evidence that the offending party intentionally and improperly interfered with its prospective contractual relation and as a result, is liable for the aggrieved party's pecuniary loss. The interference must consist of: "(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation." Nostrame v. Santiago, 213 N.J. 109, 122 (2013) (quoting Restatement (Second) of Torts, §766B).

Here, the factual record shows Teach Solais was represented by counsel and retained the services of an independent real estate broker to represent its interests at every stage of the negotiations to purchase this property. Nagel was Hossain's real estate agent and acted at all times on his behalf. Nagel never misrepresented her role in the negotiations and acted in good faith when she conveyed Hossain's decisions to reject Teach Solais' offers. Of particular relevance, Teach Solais' failure to purchase this property is attributable to its decision, whether by ignorance or by choice, not to attend the sheriff's sale and participate in the bidding process. The record does not contain any evidence that Nagel or anyone acting on her behalf ever attempted or conspired to conceal the date and location of the sheriff's sale. In short, Teach Solais did not establish

12

a prima facie case of tortious interference with a contract.  See Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 751-52 (1989).

Teach Solais' claims based on common law fraud are equally without merit.  "The elements of common-law fraud are '(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'"  Allstate New Jersey Ins. Co. v. Lajara, 222 N.J. 129, 147 (2015) (quoting Banco Popular N. Am. v. Gandi, 184 N.J. 161, 172-73 (2005)).  "A misrepresentation amounting to actual legal fraud consists of a material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his [or her] detriment."  Jewish Center of Sussex Cty. v. Whale, 86 N.J. 619, 624 (1981).

The record we have described at length here is utterly devoid of any evidence that Nagel's behavior in her role as Hossain's real estate agent was anything other than professional and honest.  She accurately conveyed her client's wishes in a timely fashion.  Teach Solais' remaining arguments lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-3291-18