767 A.2d 485

STATE FARM INSURANCE COMPANY, PLAINTIFF–RESPON-
DENT, v. DR. ULISES C. SABATO, AS ASSIGNEE OF CARLOS
NAULA, HUGO NAULA AND WILMER NAULA, DEFEN-
DANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Submitted November 28, 2000—Decided February 6, 2001.

Before Judges CONLEY and LESEMANN.

*S. Gregory Moscaritolo*, attorney for appellants.

*Harwood Lloyd*, attorneys for respondent (*Curtis J. Turpan*, of
counsel and on the brief).

The opinion of the court was delivered by

LESEMANN, J.A.D.

Defendant, assignee of Personal Injury Protection (PIP) claims of three brothers, Carlos, Hugo and Wilmer Naula, who were injured in an automobile accident, appeals from a Law Division judgment which dismissed the claims of two of the brothers. The court rejected defendant's request to submit the claims to arbitration under *N.J.S.A.* 39:6A–5c. Instead, it enjoined such arbitration and held a plenary hearing on the claims. It then concluded that one of the brothers, Wilmer, had lied to the plaintiff insurer respecting his Social Security number, and another, Carlos, had provided information that was "confusing and evasive." The court therefore denied the claims of Wilmer and Carlos, although it allowed the claim of the third brother, Hugo, who had not appeared for the examination at which his two brothers allegedly provided misinformation.[1]

We agree with defendant that the court should have permitted the claims to proceed to statutory arbitration, that the arbitrator in such a proceeding is empowered to determine the issues of coverage and fraud which the trial court improperly decided itself, and that the judgment on appeal should therefore be reversed and the matter remanded for arbitration.

As the facts appear at this early stage of the case, Wilmer Naula was operating a vehicle owned by his father, Hector Naula, with Carlos and Hugo as passengers, when the vehicle was involved in an accident and the three brothers were injured. The three maintain that they live with their father, that none of them owns an automobile of his own, and thus they are additional insureds under Hector's policy with plaintiff State Farm Insurance Company (State Farm). They say also that they were

---

[1] The trial court determined the plaintiff insurer was required to pay PIP benefits on behalf of Hugo (including bills submitted by defendant Dr. Sabato for treatment of Hugo) and no one appeals from that determination. Defendant does, however, appeal from the amount of counsel fees awarded to him and to Hugo's personal attorney respecting Hugo's claim, and that issue is discussed below.

treated by Dr. Ulises C. Sabato for their injuries, and Dr. Sabato then filed an application for PIP benefits on behalf of the brothers and as assignee of their claims.

When State Farm received those claims, it commenced an investigation and, as part of that investigation, it scheduled an Examination Under Oath (EUO) to depose the brothers and obtain information that the insurer deemed relevant to the matter. Wilmer and Carlos appeared for the examination; Hugo did not, and plaintiff made no further effort to obtain Hugo's appearance.

Wilmer and Carlos speak little if any English, and, although a translator was present, the transcript of the EUO is confusing and difficult to follow. Such basic questions as Wilmer's address and that of his father produced what seems to be conflicting information. The same is true respecting the nature and extent of Wilmer's injury and his Social Security status. Wilmer provided a number which he maintained was his Social Security number, but that number could not be confirmed. He also said he did not own a car, that he used the car owned by his father with whom he lived, and that he did have a driver's license.

Similar confusion characterized Carlos' examination. Carlos gave confusing information as to where he lived. He said he did not own an automobile, but he seemed to indicate that Wilmer had owned an automobile for at least some time during the last few years. He also said he lived with his father and used his father's car. He had applied for Social Security enrollment but had not yet received a number.

Following the EUO, defendant filed a request for the statutory arbitration called for by *N.J.S.A.* 39:6A–5c. State Farm, however, sought a restraining order against the claimants' proceeding with that arbitration. The trial court granted a temporary restraint, held a plenary hearing, and then dismissed the claims of both Wilmer and Carlos. The court concluded that, although illegal aliens can recover PIP benefits, Wilmer had knowingly lied to State Farm respecting his Social Security status. It said the purpose of the EUO was to enable the carrier to acquire knowl-

edge and investigate a claim, and therefore Wilmer's lying to the carrier had the capacity to influence State Farm's investigation. Accordingly, the court held that Wilmer's claim, and that of Dr. Sabato which was based on Wilmer's claim, were barred.

Similarly, the court found that Carlos' testimony "was confusing and his answers were evasive." In addition, since Carlos had failed to appear at the scheduled plenary hearing, the court dismissed his claim "for lack of prosecution." However, since State Farm had established no basis for dismissal of Hugo's claim, the court directed that State Farm must compensate Hugo (by payment to his assignee, Dr. Sabato) pursuant to the normal schedule of PIP benefits.

On appeal, defendant argues that the court erred in hearing and resolving the brothers' claims rather than referring them to arbitration as mandated by statute. State Farm answers by asserting that the court was authorized to determine the threshold issue of whether there was PIP coverage here, or whether the claimants were disqualified for fraud or some other reason. However, we are satisfied that the defenses asserted by State Farm— be they fraud or some other basis for alleged non coverage— should have been resolved by an arbitrator. The statutorily mandated arbitration is not as narrow and circumscribed as State Farm claims.

The arbitration we deal with here is not simply a matter of contract. Rather, it is mandated by statute. *N.J.S.A.* 39:6A–5c provides that, "[a]ll automobile insurers shall provide any claimant with the option of submitting a dispute under this section to binding arbitration. Arbitration proceedings shall be administered and subject to procedures established by the American Arbitration Association." In *State Farm Mutual Auto. Ins. Co. v. Molino,* 289 *N.J.Super.* 406, 410, 674 *A.2d* 189 (App.Div.1996), this court held that the language of that statute should be read as broadly as the words themselves indicate, that statutory arbitrators are authorized to determine both factual and legal issues, and that coverage issues are to be decided by the arbitrator in the

same manner as issues dealing with the extent of injury and the amount of recovery. "Carriers should not be empowered to avoid arbitration simply by characterizing PIP disputes as questions of 'entitlement' or 'coverage' and then seeking judicial resolution of those issues." *Id.* at 411, 674 *A.*2d 189.

State Farm argues that the Law Division decision in *Allstate Ins. Co. v. Lopez,* 311 *N.J.Super.* 660, 710 *A.*2d 1072 (Law Div. 1998) authorizes a trial court to stay arbitration while the court itself determines coverage issues arising from allegations of fraud. However, *Lopez* involved what was described as a massive insurance fraud ring. The court there concluded that in order to avoid the unmanageable spectacle of innumerable individual arbitration proceedings, all susceptible to varying and inconsistent results, judicial economy as well as the entire controversy doctrine required resolution of all claims in a single action, and thus arbitration was inappropriate. That reasoning has no application here. We also note that if there is indeed an inconsistency between *Molino* and *Lopez,* the trial court decision in *Lopez* must, of course, give way to the appellate decision in *Molino.*

In addition to the basic question of whether the trial court should have heard and resolved this case at all, we find the court's substantive conclusions troubling. We are not clear as to how, if at all, State Farm claims it was prejudiced by misrepresentations respecting Wilmer's or Carlos' Social Security numbers and/or status. And the same is true concerning their alleged confusing and dissembling answers to other questions. While an insurer certainly has the right to obtain information to aid in its investigation of a claim, it is not clear what, if anything, State Farm claims it was prevented from accomplishing or what a more detailed investigation might have revealed. In any event, if State Farm alleges it was prejudiced, or that it should have a right to disclaim coverage even without a showing of prejudice, State Farm can certainly submit those contentions to the arbitrator, and the arbitrator will be free to hear and resolve them. But under the

statutory scheme, it is the arbitrator and not the court that must resolve those issues.

Finally, we note that defendant also appeals from what he claims is the inadequate size of the counsel fee awards respecting Hugo's successful claim: $3,500 to plaintiff's attorney for services respecting Hugo's claim; and $500 to Hugo's personal attorney. Plaintiff claims the trial court should have held a hearing before fixing those amounts. However, both the trial court and State Farm note that in fact the parties had reached an agreement on the amount of fees to be awarded respecting Hugo's claims, and those agreed upon amounts are the sums embodied in the court's agreement. In view of that agreement there was obviously no need for a hearing, and plaintiff's argument to the contrary has no merit.

The dismissal of the claims respecting Wilmer and Carlos Naula is reversed, and the matter is remanded for arbitration pursuant to *N.J.S.A.* 39:6A–5c. The award of counsel fees respecting the claim of Hugo Naula is affirmed.