**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0778-23

ALLSTATE NEW JERSEY INSURANCE
COMPANY, ALLSTATE NEW JERSEY
PROPERTY AND CASUALTY
INSURANCE COMPANY, ALLSTATE
INSURANCE COMPANY, ALLSTATE
FIRE & CASUALTY INSURANCE
COMPANY, ALLSTATE NORTHBROOK
INDEMNITY COMPANY, and ALLSTATE
PROPERTY AND CASUALTY
INSURANCE COMPANY,

        Plaintiffs-Appellants,

v.

CARTERET COMPREHENSIVE
MEDICAL CARE, PC, d/b/a MONROE
COMPREHENSIVE MEDICAL CARE,
d/b/a COMPREHENSIVE MEDICAL
CARE, d/b/a FASSST SPORT, d/b/a
COMPREHENSIVE VEIN CARE,
INIMEG MANAGEMENT COMPANY,
INC., 311 SPOTSWOOD-ENGLISHTOWN
ROAD REALTY, LLC, 72 ROUTE 27
REALTY, LLC, SAME DAY
PROCEDURES, LLC, MID-STATE
ANESTHESIA CONSULTANTS, LLC,
NORTH JERSEY PERIOPERATIVE
CONSULTANTS, PA, INTERVENTIONAL
PAIN CONSULTANTS OF NORTH
JERSEY, LLC, d/b/a PAIN MANAGEMENT
PHYSICIANS OF NEW JERSEY, d/b/a
METRO PAIN CENTERS, d/b/a METRO

<div style="border:1px solid black; display:inline-block; padding:6px; text-align:center;">

**APPROVED FOR PUBLICATION**

**January 9, 2025**

**APPELLATE DIVISION**

</div>

PAIN AND VEIN, SOOD MEDICAL
PRACTICE, LLC, ONE OAK MEDICAL
GROUP, LLC, d/b/a NEW JERSEY VEIN
TREATMENT CLINIC, ONE OAK
ORTHOPAEDIC & SPINE GROUP, LLC,
ONE OAK HOLDING, LLC, JOSEPH
BUFANO, JR., D.C., CHRISTOPHER
BUFANO, MICAH LIEBERMAN, D.C.,
RICHARD J. MILLS, M.D., JENNIFER M.
O'BRIEN, ESQ., GERALD M. VERNON,
D.O., D.C., ALVIN F. MICABALO, D.O.,
JOSE CAMPOS, M.D., JOHN S. CHO,
M.D., MICHAEL C. DOBROW, D.O.,
RAHUL SOOD, D.O., SACHIN SHAH,
M.D., FAISAL MAHMOOD, M.D., RAVI
K. VENKATARAMAN, M.D., MANGLAM
NARAYANAN, M.D., and SHANTI
EPPANAPALLY, M.D.,

        Defendants-Respondents.

_____

Argued December 5, 2024 – Decided January 9, 2025

Before Judges Gilson, Firko, and Bishop-Thompson.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-1469-23.

David N. Cinotti argued the cause for appellants (Pashman Stein Walder Hayden, PC, and McGill and Hall LLC, attorneys; Michael S. Stein and Thomas Hall, of counsel and on the briefs; David N. Cinotti, Doris Cheung, and Darcy Baboulis-Gyscek, on the briefs).

2

Kevin J. Musiakiewicz argued the cause for respondent John S. Cho, M.D. (Calcagni & Kanefsky, LLP, attorneys; Eric T. Kanefsky, of counsel and on the brief; Kevin J. Musiakiewicz and Philip Morrow, on the brief).

Andrew Gimigliano argued the cause for respondents Mid-State Anesthesia Consultants, LLC, Interventional Pain Consultants of North Jersey, LLC, d/b/a Pain Management Physicians of New Jersey, d/b/a Metro Pain Centers, d/b/a Metro Pain and Vein, Sood Medical Practice, LLC, Rahul Sood, D.O., and Sachin Shah, M.D. (Mandelbaum Barrett PC, attorneys; Andrew Gimigliano, Brian M. Block, Mohamed H. Nabulsi, and Michael S. Kivowitz, on the briefs).

Jeffrey B. Randolph argued the cause for respondents Carteret Comprehensive Medical Care, PC d/b/a Monroes Comprehensive Medical Care, d/b/a Comprehensive Medical Care, d/b/a Fassst Sport, d/b/a Comprehensive Vein Care, Inimeg Management Company, Inc., 311 Spotswood-Englishtown Road Realty, LLC, and 72 Route 27 Realty, LLC (Law Offices of Jeffrey Randolph, LLP, attorneys; Jeffrey B. Randolph and Anna M. Skowronska, on the brief).

Thomas O. Mulvihill argued the cause for amici curiae The Insurance Council of New Jersey and American Property Casualty Insurance Association (Methfessel & Werbel, attorneys; Thomas O. Mulvihill, on the brief).

Daniel S. Hunczak argued the cause for amicus curiae Coalition Against Insurance Fraud (Bruno Gerbino Soriano & Aitken, LLP, attorneys; Daniel S. Hunczak, on the brief).

William L. Brennan argued the cause for amicus curiae Citizens United Reciprocal Exchange (Brennan &

Sponder, attorneys; William L. Brennan, of counsel and on the brief).

Carl A. Salisbury argued the cause for amicus curiae Association of New Jersey Chiropractors (Bramnick, Rodriguez, Grabas, Arnold & Mangan, attorneys; Carl A. Salisbury, on the brief).

Jeffrey S. Posta, Deputy Attorney General, argued the cause for amici curiae The New Jersey Department of Banking and Insurance and The New Jersey Office of the Insurance Fraud Prosecutor (Matthew J. Platkin, Attorney General, attorney; Angela Cai, Deputy Solicitor General, Janet Greenberg Cohen, Assistant Attorney General, and Adedayo Adu, Assistant Attorney General, of counsel; Jeffrey S. Posta, on the brief).

The opinion of the court was delivered by

GILSON, P.J.A.D.

The issue presented is whether claims of insurance fraud under the Insurance Fraud Prevention Act (the Fraud Act), N.J.S.A. 17:33A-1 to -30, and the New Jersey Anti-Racketeering Act (RICO), N.J.S.A. 2C:41-1 to -6.2, are subject to arbitration under the Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A. 39:6A-1.1 to -35. The resolution of that issue involves discerning and harmonizing the Legislature's intent in enacting the Fraud Act, RICO, AICRA, and the arbitration system set up under AICRA for the resolution of disputes concerning personal injury protection (PIP) benefits. We hold that

insurance fraud claims under the Fraud Act and RICO are not subject to PIP arbitration under AICRA.

Accordingly, we reverse and vacate three orders in this matter that compelled plaintiffs' Fraud Act, RICO, and related declaratory judgment claims to PIP arbitration. We also vacate the provisions of those orders that dismissed plaintiffs' complaint. Therefore, we remand with instruction that plaintiffs be permitted to pursue their claims in the Law Division, with the right to a jury trial.

I.

We discern the facts from the record developed when certain defendants moved to dismiss all of plaintiffs' claims and compel arbitration. In doing so, we accept for purposes of this appeal the allegations in plaintiffs' complaint.

Plaintiffs are six related insurance companies: Allstate New Jersey Insurance Company; Allstate New Jersey Property and Casualty Insurance Company; Allstate Insurance Company; Allstate Fire & Casualty Insurance Company; Allstate Northbrook Indemnity Company; and Allstate Property and Casualty Insurance Company (plaintiffs or collectively Allstate). Allstate provides no-fault automobile insurance policies in New Jersey, under which insureds can recover PIP benefits if they are injured in an automobile accident.

When insureds receive medical treatment, they may, and typically do, assign their PIP benefits to their medical providers. The medical providers can then seek payment from insurers, like Allstate. See N.J.S.A. 39:6A-4 (allowing PIP benefits to be assigned "to a provider of service benefits").

In March 2023, Allstate filed a nine-count complaint against over thirty defendants, including several medical practices, the owners of those practices, and current and former physicians and administrators working at or with those medical practices. Allstate alleges that from 2008 through 2022, defendants conspired to obtain over $1.7 million in PIP benefits from Allstate through more than 800 fraudulent and misleading medical claims. In its complaint, Allstate asserts that defendants' actions violated the Fraud Act and RICO. Allstate also contends that certain defendants violated the Corporate Practice of Medicine Doctrine, N.J.A.C. 13:35-6.16, and New Jersey's Anti Self-Referral Law, N.J.S.A. 45:9-22.4 to -22.9. In support of its claims, Allstate alleges that numerous defendants engaged in kickback schemes, illegal self-referrals, and patterns of fraud and racketeering in providing the services for which defendants obtained payments from Allstate. Thus, Allstate seeks declaratory judgments, including a declaration that one defendant medical practice was illegally structured and was not entitled to receive PIP benefits. As remedies, Allstate

6

seeks damages, including the disgorgement of over $1.7 million that Allstate paid to defendants, treble damages, injunctive relief, and attorneys' fees.

In response to Allstate's complaint, three groups of defendants separately moved to dismiss the complaint and to compel arbitration. Other defendants, however, filed answers and requested a jury trial.

On October 27, 2023, the trial court entered three orders granting the moving defendants' request to compel all claims asserted by Allstate to arbitration under AICRA. Two of those orders also dismissed Allstate's complaint, without prejudice, including the claims against the non-moving defendants.

In support of its orders, the trial court issued three written statements of reasons, that were all based on the same substantive reasoning. The trial court held that AICRA's language required arbitration of "all 'disputes' around the 'recovery' of PIP [b]enefits." The trial court noted that "'any party to the dispute'" may invoke arbitration, and that the arbitration provision encompassed "a broad array of legal disputes regarding PIP benefits, including mistaken claims for benefits, fraud-based claims, or any other claim including the 'recovery' of PIP [b]enefits." The trial court then held that all of Allstate's claims were within the purview of the provision, because they involved "(1) a dispute

7

by Allstate (2) involving [Defendants'] recovery of PIP [b]enefits that (3) one party wishe[d] to send to arbitration."  Finally, the trial court explained that it discerned nothing in the statute, nor any independent reason, for the fraud-based claims to be exempted from the arbitration mandate.

Allstate now appeals from the orders dismissing its complaint and compelling arbitration.  See R. 2:2-3(b)(8) (allowing appeals from orders compelling arbitration).

<center>II.</center>

On appeal, Allstate argues that the trial court erred in finding that AICRA requires PIP arbitration of its Fraud Act and RICO claims.  In that regard, Allstate contends that (1) AICRA cannot take away the right to a jury trial guaranteed by the Fraud Act and RICO; (2) the plain language of AICRA provides only for PIP arbitration of disputes regarding "recovery of medical expense benefits or other benefits provided under [PIP] coverage"; (3) AICRA, the Fraud Act, and RICO can be harmonized so that an insurance claim under the Fraud Act or RICO is not subject to PIP arbitration; and (4) canons of statutory interpretation support the position that claims under the Fraud Act and RICO are not subject to PIP arbitration.

<center>8</center>

Four amici curiae filed briefs supporting Allstate's position. They are the New Jersey Department of Banking and Insurance (the Department) and the New Jersey Office of the Insurance Fraud Prosecutor (the OIFP), Citizens United Reciprocal Exchange (CURE), the Coalition Against Insurance Fraud (the Coalition), and the Insurance Council of New Jersey and American Property Casualty Insurance Association. The amici briefs largely echo Allstate's arguments that claims brought under the Fraud Act are not subject to PIP arbitration. Several of the amici also assert that the contrary decision in Government Employees Insurance Co. v. Mount Prospect Chiropractic Center (the GEICO decision), 98 F.4th 463 (3d. Cir. 2024) rests on flawed reasoning and is otherwise not binding on us.

In response, defendants maintain that Allstate's claims are subject to PIP arbitration under AICRA. According to defendants, (1) AICRA requires claims regarding the recovery of medical expense benefits, including claims of fraud, to be submitted to PIP arbitration; (2) the trial court correctly dismissed Allstate's complaint for lack of subject matter jurisdiction; (3) caselaw from the United States Court of Appeals for the Third Circuit (the Third Circuit) supports the contention that Fraud Act claims are subject to PIP arbitration; and (4) both the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, and New Jersey

A-0778-23

Arbitration Act (NJAA), N.J.S.A. 2A:23B-1 to -36, support the conclusion that Allstate's claims are subject to PIP arbitration. Defendants also assert that the history of AICRA demonstrates that the Legislature intended for Fraud Act and RICO claims to be subject to mandatory PIP arbitration, and that the caselaw Allstate relies on to make the contrary argument is distinguishable.

Amicus Association of New Jersey Chiropractors supports defendants' position, contending that a party can waive his or her right to a jury trial in an arbitration agreement. Consequently, the Association of New Jersey Chiropractors argues that by opting into the arbitration protocols of AICRA, Allstate waived its right to a jury trial.

III.

Appellate courts review orders compelling arbitration under a de novo standard. Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 131 (2020). We also review de novo a trial court's interpretation of statutes. Allstate N.J. Ins. Co. v. Lajara, 222 N.J. 129, 139 (2015). The primary issue presented on this appeal is whether claims of insurance fraud under the Fraud Act and RICO can be compelled to PIP arbitration under AICRA. To put that issue in context, we first summarize the Fraud Act, RICO, and AICRA.

A. The Fraud Act.

10

The Fraud Act was enacted in 1983 "to confront aggressively the problem of insurance fraud in New Jersey." N.J.S.A. 17:33A-2. In that regard, the Legislature declared:

> The purpose of this act is to confront aggressively the problem of insurance fraud in New Jersey by facilitating the detection of insurance fraud, eliminating the occurrence of such fraud through the development of fraud prevention programs, requiring the restitution of fraudulently obtained insurance benefits, and reducing the amount of premium dollars used to pay fraudulent claims.
>
> [N.J.S.A. 17:33A-2.]

The Fraud Act authorizes both the Commissioner of Banking and Insurance (the Commissioner) and insurance companies to bring actions in courts to seek damages, costs, and attorneys' fees. N.J.S.A. 17:33A-5, 17:33A-7. Regarding suits by insurance companies, the Fraud Act states:

> Any insurance company damaged as the result of a violation of any provision of this act may sue therefor in any court of competent jurisdiction to recover compensatory damages, which shall include reasonable investigation expenses, costs of suit and attorneys fees.
>
> [N.J.S.A. 17:33A-7(a).]

An insurance company is also entitled to an award of treble damages where a pattern of fraud is proven. N.J.S.A. 17:33A-7(b). Moreover, the Fraud

11

Act authorizes the Commissioner to intervene in any case brought by an insurance company alleging a violation of the Act. N.J.S.A. 17:33A-7(d).

The New Jersey Supreme Court has held that private parties in an action brought under the Fraud Act have a right to a jury trial "because the [Fraud Act] provides legal relief in the form of compensatory and punitive damages and because [a Fraud Act] claim is comparable to common-law fraud." Lajara, 222 N.J. at 151. In Lajara, the Court held that the right to a jury trial could be invoked by a defendant. Id. at 134-35, 151.

B.    RICO.

The Legislature enacted RICO "to safeguard the public interest . . . to prevent, disrupt[,] and eliminate the infiltration of organized crime type activities which are substantial in nature into the legitimate trade or commerce of this State." N.J.S.A. 2C:41-1.1(c). The aim of RICO is to combat "'[r]acketeering activity,'" which is broadly defined to include various crimes, including "fraudulent practices." N.J.S.A. 2C:41-1(a)(o).

Modeled on the federal statute, RICO provides a private cause of action. N.J.S.A. 2C:41-4(c). "Any person damaged in his [or her] business or property by reason of a violation" of RICO "may sue therefor in any appropriate court and shall recover" treble damages and cost of suit, including reasonable

attorneys' fees. N.J.S.A. 2C:41-4(c). A court also has express authority to "restrain the acts or conduct which constitute violations of" RICO. N.J.S.A. 2C:41-4(a).

"All remedies permitted by [New Jersey's] RICO law are 'cumulative with each other and other remedies at law,' [] and the Legislature has instructed that [New Jersey's] RICO law must be 'liberally construed to effect [its] remedial purposes[.]'" Fairfax Fin. Holdings Ltd. v. S.A.C. Cap. Mgmt., L.L.C., 450 N.J. Super. 1, 37 (App. Div. 2017) (fourth alteration in original) (first quoting N.J.S.A. 2C:41-6.1; and then quoting N.J.S.A. 2C:41-6). Moreover, the law is well-settled that parties to a civil RICO action have a right to a jury trial. N.J.S.A. 2C:41-4. See also Grandvue Manor, LLC v. Cornerstone Contracting Corp., 471 N.J. Super. 135, 142 (App. Div. 2022).

C.     No-Fault Insurance and AICRA.

New Jersey operates under a no-fault automobile insurance system, which includes AICRA. See N.J.S.A. 39:6A-1.1 to -35. Under AICRA, every standard automobile liability insurance policy issued in New Jersey must provide PIP benefits to the named insured and members of the insured's household. N.J.S.A. 39:6A-4. Those benefits are paid regardless of who is at fault for the accident. Ibid.

A-0778-23

AICRA, enacted in 1998, established a resolution system to expeditiously resolve disputes regarding the amount or legitimacy of PIP claims. That system may consist of either arbitration or review by a medical review organization. N.J.S.A. 39:6A-5.1(c), (d); N.J.S.A. 39:6A-5.2. In that regard, AICRA states:

> Any dispute regarding the recovery of medical expense benefits or other benefits provided under personal injury protection coverage pursuant to section 4 of [L. 1972, c. 70] (C. 39:6A-4), section 4 of [L. 1998, c. 21] (C. 39:6A-3.1) or section 45 of [L. 2003, c. 89] (C. 39:6A-3.3) arising out of the operation, ownership, maintenance or use of an automobile may be submitted to dispute resolution on the initiative of any party to the dispute, as hereinafter provided.
>
> [N.J.S.A. 39:6A-5.1(a).]

AICRA explains that the type of disputes covered by PIP arbitration "may include, but not necessarily be limited to," matters concerning:

> (1) interpretation of the insurance contract; (2) whether the treatment or health care service which is the subject of the dispute resolution proceeding is in accordance with the provisions of section 4 of P.L. 1972, [c.] 70 (C. 39:6A-4), section 4 of P.L. 1998, [c.] 21 (C. 39:6A-3.1) or section 45 of P.L. 2003, [c.] 89 (C. 39:6A:-3.3) or the terms of the policy; (3) the eligibility of the treatment or service for compensation; (4) the eligibility of the provider performing the treatment or service to be compensated under the terms of the policy or under regulations promulgated by the commissioner, including whether the person is licensed or certified to perform such treatment; (5) whether the disputed medical treatment was actually performed; (6) whether

14

diagnostic tests performed in connection with the treatment are those recognized by the commissioner; (7) the necessity or appropriateness of consultations by other health care providers; (8) disputes involving application of and adherence to fee schedules promulgated by the commissioner; and (9) whether the treatment performed is reasonable, necessary, and compatible with the protocols provided for pursuant to P.L. 1998, [c.] 21 (C. 39:6A-1.1 [to -35]).

[N.J.S.A. 39:6A-5.1(c).]

AICRA delegated to the Commissioner the responsibility to promulgate rules and regulations regarding dispute resolution, and to designate an organization to administer the proceedings. N.J.S.A. 39:6A-5.1(b); see also N.J.S.A. 39:6A-1.2 (explaining that the "[C]ommissioner may promulgate any rules and regulations . . . deemed necessary in order to effectuate the provisions of this amendatory and supplementary act").

In accordance with that authority, the Commissioner has established regulations detailing the "procedures for the resolution of disputes concerning the payment of medical expense and other benefits provided by the personal injury protection coverage in policies of automobile insurance." N.J.A.C. 11:3-5.1(a). See N.J.A.C. 11:3-5.1 to -5.12. Under those regulations, a request for arbitration of a "PIP dispute" can be made by the injured party, the insured, the provider who is an assignee of PIP benefits, or the insurer. N.J.A.C. 11:3-5.6(a).

Since 2011, the Commissioner has used Forthright Solutions (Forthright) as the exclusive PIP arbitration services provider in New Jersey. See Forthright, New Jersey No-Fault Arbitration Rules (rev. 2022) [hereinafter New Jersey No-Fault Arbitration Rules], https://www.nj-no-fault.com/rules. See also Citizens United Reciprocal Exch. v. N. NJ Orthopedic Specialists, 445 N.J. Super. 371, 376-77 (App. Div. 2016) (recognizing that Forthright currently serves as the arbitration forum for PIP disputes); Kimba Med. Supply v. Allstate Ins. Co. of NJ, 431 N.J. Super. 463, 468 (App. Div. 2013). Forthright, in turn, has issued rules governing PIP arbitration. See New Jersey No-Fault Arbitration Rules; see also N.J.A.C. 11:3-5.4(b).

Under AICRA's regulations, insurers are required to adopt a Decision Point Review Plan (DPR Plan). DPR Plans outline the insurer's oversight of the payment of PIP benefits to medical providers. See N.J.A.C. 11:3-4.7. DPR Plans are also required to have an arbitration provision, which requires disputes for PIP benefits to be resolved through arbitration under AICRA. See N.J.A.C. 11:3-4.7B(b) ("Insurers shall only require a one-level appeal procedure for each appealed issue before making a request for alternate dispute resolution in accordance with N.J.A.C. 11:3-5. That is, each issue shall only be required to

receive one internal appeal review by the insurer prior to making a request for alternate dispute resolution.").

"The goal of PIP is to provide prompt medical treatment for those who have been injured in automobile accidents without having that treatment delayed because of payment disputes." Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med., 210 N.J. 597, 609 (2012). In that regard, N.J.S.A. 39:6A-5.1 "establish[ed] an expeditious non-judicial procedure for resolving any dispute regarding the payment of PIP benefits, in furtherance of the No-Fault Act's objectives of facilitating 'prompt and efficient provision of benefits for all accident injury victims' and 'minimiz[ing] resort to the judicial process.'" Endo Surgi Ctr., PC v. Liberty Mut. Ins. Co., 391 N.J. Super. 588, 594 (App. Div. 2007) (second alteration in original) (quoting Gambino v. Royal Globe Ins. Cos., 86 N.J. 100, 105, 107 (1981)).

D.    Interpreting and Harmonizing the Fraud Act, RICO, and AICRA.

"When interpreting a statute, [the] aim [is] to effectuate the Legislature's intent, which is best indicated by the statutory text." Keyworth v. CareOne at Madison Ave., 258 N.J. 359, 379 (2024) (citations omitted). "In construing statutory text, 'words and phrases shall be given their generally accepted meaning, unless that meaning is inconsistent with the clear intent of the

Legislature or unless the statute provides a different meaning.  Words in a statute should not be read in isolation.'"  Ibid. (quoting Shelton v. Restaurant.com, Inc., 214 N.J. 419, 440 (2013)).

Accordingly, courts are to "read the statute[] in [its] entirety and construe each part or section . . . in connection with every other part or section to provide a harmonious whole."  C.A. ex rel. Applegrad v. Bentolila, 219 N.J. 449, 459-60 (2014) (omission in original) (first quoting State v. Marquez, 202 N.J. 485, 499 (2010); and then quoting Bedford v. Riello, 195 N.J. 210, 224 (2008)) (internal quotation marks omitted).  "If the text's plain meaning is clear and unambiguous, we apply the law as written."  Keyworth, 258 N.J. at 380 (first quoting State v. J.V., 242 N.J. 432, 443 (2020); and then quoting Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012)) (internal quotation marks omitted).  "Conversely, if the text is ambiguous, 'we may turn to extrinsic evidence, including legislative history to aid our inquiry.'"  Ibid. (quoting W.S. v. Hildreth, 252 N.J. 506, 518 (2023)).

It is "[a]n overriding principle of statutory construction" that courts must seek to "harmonize legislative schemes," Richter v. Oakland Bd. of Educ., 246 N.J. 507, 538 (2021), "in light of their purposes," Am. Fire & Cas. Co. v. N.J. Div. of Tax'n, 189 N.J. 65, 79-80 (2006) (citing St. Peter's Univ. Hosp. v. Lacy,

185 N.J. 1, 14 (2005)). "Whenever statutory analysis 'involves the [interpretation] of two or more statutes, [courts] seek to harmonize [them], under the assumption that the Legislature was aware of its actions and intended' for related laws 'to work together.'" N.J. Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 555 (2012) (third alternation in original) (quoting State ex rel. J.S., 202 N.J. 465, 480 (2010) (citations omitted)).

The plain language of AICRA provides for PIP arbitration of "[a]ny dispute regarding the recovery of medical expense benefits or other benefits provided under personal injury protection coverage" pursuant to N.J.S.A. 39:6A-4 (personal injury protection), N.J.S.A. 39:6A-3.1 (basic automobile policies), or N.J.S.A. 39:6A-3.3 (special automobile insurance policies) arising out of the operation, ownership, maintenance, or use of an automobile. See N.J.S.A. 39:6A-5.1(a); see also N.J.S.A. 39:6A-5.1(c). While that definition is broad, the focus is on providing swift compensation for people injured in automobile accidents. See Gambino, 86 N.J. at 105-06; Amiano v. Ohio Cas. Ins. Co., 85 N.J. 85, 90 (1981) ("The No Fault Act is social legislation intended to provide insureds with the prompt payment of medical bills, lost wages and other such expenses without making them await the outcome of protracted litigation.").

Consequently, the PIP regulations and PIP arbitration process are designed to expeditiously address disputes concerning the payment of medical expenses. See N.J.A.C. 11:3-5.1(a). PIP arbitrators usually provide limited or no discovery and do not involve parties who did not sign a bill or make a claim for medical services. And, even where limited discovery is available, the inquiry is limited to facts related to the nature, extent, or validity of the PIP claim. N.J.S.A. 39:6A-13(g). In short, PIP arbitration is a streamlined and specialized process to resolve disputes between insureds, their medical providers, and insurance companies. In that regard, we have held that "PIP benefits are statutory in origin" and the remedies for insureds and assignees who are denied PIP benefits are limited to interest and attorney's fees. Endo Surgi Ctr., 391 N.J Super. at 591-95.

By contrast, the goal of the Fraud Act is to "confront aggressively the problem of insurance fraud in New Jersey." N.J.S.A. 17:33A-2; Lajara, 222 N.J. at 143. The statute provides for a private right of action to be brought in "any court of competent jurisdiction." N.J.S.A. 17:33A-7. Moreover, the Fraud Act allows for the recovery of compensatory damages, investigative expenses, costs, attorneys' fees, and, where a pattern of fraud is established, treble damages. Ibid. The Fraud Act also vests broad authority in the Bureau of Fraud Deterrence

to conduct discovery and investigate violations. See N.J.S.A. 17:33A-10. Therefore, the legislative goal in enacting the Fraud Act was to root out insurance fraud.

RICO has the goal of eliminating "activities [that] present[] a serious threat to the political, social and economic institutions of this State." N.J.S.A. 2C:41-1.1(a). RICO provides for "strict civil and criminal sanctions," N.J.S.A. 2C:41-1.1(c), which are to be administered by a court, N.J.S.A. 2C:41-3(c), 2C:41-4(a). RICO allows private persons to bring a civil action in "court" to recover damages and to seek injunctive relief. N.J.S.A. 2C:41-4(a), (c).

The parties dispute whether a PIP arbitrator can grant the relief called for in the Fraud Act and RICO. In that regard, the current PIP arbitration regulations and the Forthright rules of PIP arbitration do not clearly provide for treble damages and injunctive reliefs. See New Jersey No-Fault PIP Arbitration Rules. See also N.J.S.A. 39:6A-5.1; N.J.A.C. 11:3-5.1; N.J.A.C. 11:3-5.6. So, there are serious questions whether a PIP arbitrator could award compensatory damages, treble damages, or attorneys' fees to an insurer. Notably, N.J.A.C. 11:3-5.6(e) limits "reasonable attorney's fees [to] [] successful claimant[s]."

Indeed, we have held, and our Supreme Court has not indicated to the contrary, that an insurer is not entitled to attorneys' fees in a PIP arbitration.

David v. Gov't Emps. Ins. Co., 360 N.J. Super. 127, 149 (App. Div. 2003) (emphasizing that "because N.J.S.A. 39:6A-9.1 does not explicitly provide for the award of counsel fees, the arbitrator erred in awarding them"), certif. denied. 178 N.J. 251 (2003); N.J. Coal. of Healthcare Pros., Inc. v. Dep't of Banking and Ins., 323 N.J. Super. 207, 263 (App. Div. 1999). Furthermore, the Fraud Act and RICO allow for various types of equitable relief. See Lajara, 222 N.J. at 144; N.J.S.A. 2C:41-4(a). PIP arbitrators, however, do not have authority to grant equitable relief. See N.J.S.A. 39:6A-5.1(e) (stating that arbitrators can grant "reimbursement [of medical expenses] . . . with interest payable"); see also N.J.S.A. 39:6A-5.1(d); Endo Surgi Ctr., 391 N.J. Super. at 592 (holding that "PIP benefits are statutory in nature").

There also are serious questions whether a PIP arbitrator can provide for broad discovery, including discovery from third parties. PIP arbitrators are not trained to handle and effectively address insurance fraud claims. See Allstate Ins. Co. v. Lopez, 311 N.J. Super. 660, 678-80 (Law. Div. 1998) (staying PIP arbitration until the court could adjudicate the Fraud Act issue). While PIP arbitrators can address fraud as a defense to a claim, State Farm Ins. Co. v. Sabato, 337 N.J. Super. 393, 394 (App. Div. 2001), they have not historically addressed insurance claims under the Fraud Act, Nationwide Mut. Fire Ins. Co.

22

v. Fiouris, 395 N.J. Super. 156, 161 (App. Div. 2007).  See also Sabato, 337 N.J. at 397 (explaining that a court is better equipped to handle allegations of massive insurance fraud).

Moreover, the PIP arbitration rules do not clearly provide for joinder of third parties.  See New Jersey No-Fault Arbitration Rules.  Thus, if the Commissioner seeks to join in a fraud claim action pursuant to N.J.S.A. 17:33A-7(d), it is unclear whether PIP arbitration rules would allow him or her to do so.

The Fraud Act, RICO, and AICRA can be harmonized when the language used in each statute is considered and construed in the context of the legislative goals.  PIP arbitration is limited to disputes "regarding the recovery of" PIP benefits.  N.J.S.A. 39:6A-5.1(a).  Thus, it is suited for disputes of whether an insured or an assignee should receive coverage for medical expenses and, if so, in what amount.  The Fraud Act, by contrast, has the goal of eliminating "'a broad range of fraudulent conduct.'"  Lajara, 222 N.J. at 143 (quoting Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 172 (2006)).  Moreover, compelling Fraud Act claims to PIP arbitration would impede N.J.S.A. 17:33A-7(d), which expressly provides:  "Upon receipt of notification of the filing of a claim by an insurer, the commissioner may join in the action for the purpose of seeking judgment for the payment of a civil penalty authorized under section 5 of this

23

act." The same rationale applies to RICO claims. Therefore, we conclude claims under the Fraud Act and RICO do not fall within the ambit of PIP arbitration under AICRA.

Our existing caselaw supports our interpretation. In Nationwide, we held that PIP arbitration did include a dispute regarding the validity of an insurance policy where the insured had allegedly lied about his state of residence when he applied for the policy. Nationwide, 395 N.J. Super. at 161. In making that holding, we reasoned AICRA "only requires arbitration of disputes regarding entitlement to or the amount of PIP benefits." Id. at 160. In short, the current PIP arbitration set up under AICRA is designed for limited disputes over the timely payment of PIP benefits. That arbitration process is not set up to handle complex insurance fraud claims.

Over fifteen years ago, we stated: "It is clear from [the provision of the Fraud Act that allows claims to be filed in any court of competent jurisdiction] that the Legislature did not contemplate that a claim of a violation of the [Fraud] Act would be heard by an arbitrator." Nationwide, 395 N.J. Super. at 161 (citing Liberty Mut., 186 N.J. at 173-74). See also Lopez, 311 N.J. Super. at 677-78 (where the Law Division explained that insurance fraud claims under the Fraud Act were to be decided in a court). If the Legislature had intended to include

24

Fraud Act claims in PIP arbitration, it would have done so more clearly or amended the statute to clarify its intent.

The history of AICRA also demonstrates that the Legislature intended PIP arbitration to be expedited and streamlined to address disputes over PIP benefits. For more than twenty-five years, PIP arbitration has been handling PIP payment disputes, often involving a single claim. The Department and the OIFP have submitted an amicus brief pointing out that insurance fraud claims have not historically been, nor should they be, subject to PIP arbitration.

Moreover, the New Jersey Supreme Court has recently distinguished between "recovery of medical benefits" and "damages based on tort claims" in the context of a workers' compensation policy. Rodriguez v. Shelbourne Spring, LLC, __ N.J. __, __ (2024) (slip op. at 16-17). The Court explained that tort claims based in negligence are different than claims for recovery of medical benefits, because a "lawsuit [based on tort claims] does not seek benefits [under the insurance policy] . . . instead, it seeks money damages as compensation." Id. at __ (slip op. at 17). Applying that same logic, we hold that complex fraud claims rooted in tort law do not fall within the ambit of PIP arbitration under AICRA, which is designed for disputes over the "recovery of medical expense benefits." N.J.S.A. 39:6A-5.1(a).

IV.

In reaching our conclusion that insurance fraud claims do not fall within the ambit of PIP arbitration, we have also considered DPR Plans, a potential constitutional issue, and the contrary holding reached by the Third Circuit.

A.    The DPR Plans.

Certain defendants argue that they also have a right to arbitrate under Allstate's DPR Plans and related assignment of benefits contracts. They contend that the arbitration provisions in the DPR Plans are an independent, and alternative, grounds for compelling arbitration and that those arbitration provisions are enforceable under the FAA. We reject that argument because the DPR Plans here were mandated by regulations promulgated under AICRA. See N.J.A.C. 11:3-4.7; N.J.A.C. 11:3-4.7B. Therefore, the arbitration provisions in the DPR Plans and related assignment of benefits contracts are no broader than the statutory PIP arbitration established by AICRA.

Under AICRA and the corresponding regulations promulgated by the Department, no-fault insurers must put in place DPR Plans, which describe the insurer's decision-making process for considering claims for PIP benefits. See N.J.A.C. 11:3-4.7. The Department must approve the DPR Plans and any amendments to them. Ibid. The DPR Plans are permitted to include "reasonable

restrictions on the assignment of benefits" from insureds to medical providers. N.J.A.C. 11:3-4.7(c)(7). Those restrictions may include "[a] requirement that as a condition of assignment, the provider agrees to submit disputes to alternate dispute resolution pursuant to N.J.A.C. 11:3-5," which implemented AICRA's statutory PIP arbitration provision. N.J.A.C. 11:3-4.9(a)(3).

By referencing N.J.A.C. 11:3, Allstate made it clear that the arbitration called for in its DPR Plans or assignment of benefits contracts was no broader than the PIP arbitration under AICRA. That reading of the DPR Plans is confirmed because when arbitration is invoked, the arbitration takes place under the arbitration system set up by AICRA and its regulations.

Moreover, to the extent that defendants seek to rely on the FAA, that Act expressly states that arbitration is a matter of contract. 9 U.S.C. § 2; see also Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010) (explaining that "[t]he FAA reflects the fundamental principle that arbitration is a matter of contract"). In that regard, the FAA "places arbitration agreements on an equal footing with other contracts." Rent-A-Center, 561 U.S. at 67 (citations omitted). "Accordingly, the FAA 'permits states to regulate . . . arbitration agreements under general contract principles . . . .'" Atalese v. U.S. Legal Servs. Grp., L.P.,

219 N.J. 430, 441 (2014) (quoting <u>Martindale v. Sandvik, Inc.</u>, 173 N.J. 76, 85 (2002)).

Here, the New Jersey state contract interpretation issue is whether the arbitration provisions in Allstate's DPR Plans, and related assignment of benefits contracts, are broader than the PIP arbitration established by AICRA. We hold, as a matter of state law, that they are not because the DPR Plans expressly stated that the arbitration is to be "[s]ubmit[ted] to alternative dispute resolutions pursuant to N.J.A.C. 11:3."

B.    The Potential Constitutional Issue.

Our interpretation of AICRA also avoids a constitutional issue. Allstate argues that if AICRA is interpreted to require its insurance fraud claims to be arbitrated, then that section of AICRA would be unconstitutional because it would deprive Allstate of its constitutional right to a jury trial under the Fraud Act and RICO.

The New Jersey Constitution guarantees the right to a jury trial "to causes of action—even statutory causes of action—that sound in law rather than equity." <u>Lajara</u>, 222 N.J. at 142. <u>See also</u> <u>N.J. Const.</u> art. I, ¶ 9 ("The right of trial by jury shall remain inviolate . . . ."). As already noted, in <u>Lajara</u> the New

Jersey Supreme Court held that private parties in a civil action under the Fraud Act have the right to a jury trial. Lajara, 222 N.J. at 151.

Private parties can negotiate arbitration agreements and waive their right to a jury trial, including for statutory claims. See Sandvik, 173 N.J. at 95-96. The Legislature, however, cannot require a private party to waive its right to a jury trial. See Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 599-600 (2013). In Jersey Central Power & Light, the New Jersey Supreme Court considered a provision in the Underground Facility Protection Act, N.J.S.A. 48:2-73 to -91, which compelled parties seeking monetary relief from harm to underground facilities to arbitrate their claims without a de novo right to a jury trial. Id. at 581. The Court held that the "mandatory, binding arbitration is impermissible because it effectively denies . . . private litigants their constitutionally guaranteed right to a trial by jury for a common-law cause of action in negligence." Id. at 593-94. The Court further explained that "even when the Legislature has acted to compel the use of arbitration [in other statutes], this Court has highlighted the important caveat of permitting a right to a trial de novo following mandatory arbitration whenever the constitutional right to jury trial [is] implicated." Id. at 597.

Because there is no constitutional right to a jury trial concerning the entitlement to or the amount of PIP benefits, the Legislature can constitutionally require PIP arbitration. See Endo Surgi Ctr., 391 N.J. Super. at 594. In Endo Surgi Center, we held that the sole remedy for wrongful denial of PIP benefits is an award of interest and attorney's fees. Ibid. We went on to explain that "if an insured (or an insured's assignee) were allowed to pursue a common law claim for an alleged bad faith denial of PIP benefits, under which there would be an entitlement to a jury trial, this would open the door to circumvention of the statutorily mandated alternative dispute resolution procedure provided by N.J.S.A. 39:6A-5.1." Id. at 594-95.

By construing AICRA's mandatory arbitration provision to cover PIP claims and not insurance fraud claims, we avoid a potential constitutional issue. It is well-settled that statutes should be construed to avoid constitutional problems. See Whirlpool Props., Inc. v. Dir., Div. of Tax'n, 208 N.J. 141, 172 (2011) (explaining that "when 'a statute may be open to a construction which would render it unconstitutional or permit its unconstitutional application, it is the duty of [the] [c]ourt to so construe the statute as to render it constitutional if it is reasonably susceptible to such interpretation'" (quoting State v. Profaci, 56 N.J. 346, 350 (1970))).

C.     The Contrary Holding By the Third Circuit.

The Third Circuit has recently reached a different conclusion and held that claims under the Fraud Act are arbitrable under AICRA. GEICO, 98 F.4th at 469. That decision is not binding on us, and we disagree with the Third Circuit's conclusion regarding New Jersey law.

In GEICO, the Third Circuit addressed consolidated appeals where GEICO had sued various medical practices alleging that the defendants had defrauded GEICO of more than $10 million by engaging in fraud to obtain PIP benefits. Id. at 466-67. The Third Circuit held that GEICO's Fraud Act claims were subject to arbitration under AICRA and GEICO's DPR Plan. Id. at 469-71.

In evaluating AICRA, the Third Circuit recognized it was addressing a question of state law. Id. at 467. It focused on the language in N.J.S.A. 39:6A-5.1(a) and reasoned that while the statute did not use the word fraud, it nonetheless covered claims of fraud under the Fraud Act. Id. at 468-69. We disagree with the Third Circuit's analysis because it did not, in our view, fully consider the legislative goals of AICRA and the Fraud Act.

As an alternative ground, the Third Circuit also concluded that GEICO's Fraud Act claims were subject to arbitration under GEICO's DPR Plan and the

A-0778-23

related assignment of benefits form.  <u>Id.</u> at 470-71.  As we have already discussed, we have construed the arbitration called for in the DPR Plans and assignment contracts, which are authorized by the regulations of AICRA, to be only as broad as PIP arbitration under AICRA.  We believe this is a question of state law and, therefore, is not an issue controlled by federal law.  As we have already analyzed, the FAA allows states to regulate arbitration agreements and construe them in accordance with state law.  <u>Atalese</u>, 219 N.J. at 441.

DPR Plans and the related assignment of benefits contracts are authorized by and limited by AICRA's regulations.  <u>See</u> N.J.A.C. 11:3-4.7; N.J.A.C. 11:3-4.7B(b).  Therefore, the scope of arbitration provisions incorporated into DPR Plans and assignments are, in our view, a question of New Jersey law.  <u>See</u> <u>State v. O'Donnell</u>, 255 N.J. 60, 81 (2023) (explaining that on questions involving state statutory law, federal court decisions are looked to "for their persuasive reasoning, but their conclusions are not binding authority").

In short, we have come to a different conclusion than the Third Circuit in <u>GEICO</u>.  Because our holding is based on New Jersey law, we are not bound by or persuaded by the reasoning and conclusions in <u>GEICO</u>.

A-0778-23

## V.

In summary, we hold that Fraud Act and RICO claims are not subject to PIP Arbitration. Therefore, the orders compelling plaintiffs' claims to PIP arbitration are reversed and vacated. This case is remanded with instructions that plaintiffs' complaint be reinstated and that they be permitted to pursue all their claims in the Law Division, with the right to a jury trial.

Reversed, vacated, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0778-23