**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3819-23

ALLSTATE FIRE & CASUALTY
INSURANCE COMPANY, ALLSTATE
INDEMNITY COMPANY, ALLSTATE
INSURANCE COMPANY, ALLSTATE
NEW JERSEY INSURANCE
COMPANY, ALLSTATE NEW JERSEY
PROPERTY & CASUALTY
INSURANCE and ALLSTATE
PROPERTY & CASUALTY
INSURANCE COMPANY,

     Plaintiffs-Appellants,

v.

PENNSAUKEN SPINE AND REHAB,
PC, DOMINIC MARIANI, D.C., MARK
A. BOLINGER, D.C., MICHAEL ROSS,
D.C., CENTRAL JERSEY
ORTHOPEDIC AND
NEURODIAGNOSTIC GROUP, LLC,
JOHN L. HOCHBERG, M.D., COLLEEN
MULRYNE, D.C., BRADLEY A.
BODNER, D.O., JOSEPH KEPKO, D.O.,

     Defendants-Respondents,

and

WILFREDO W. CASTRO, a/k/a
WILFREDO S. CASTRO, FREDDIE
CASTRO, FRED SERRANO, SILVERS
LANGSAM & WEITZMAN
ASSOCIATES, PC (f/k/a SILVERS,
LANGSAM & WEITZMAN, PC), DEAN
WEITZMAN, ESQUIRE, BROWNSTEIN
PEARLMAN WIEZER NEWMAN &
COOK, PC (f/k/a BROWNSTEIN
PEARLMAN WIEZER & NEWMAN,
PC) and CURTIS BRACEY,

     Defendants.

_____

Argued September 30, 2025 – Decided November 13, 2025

Before Judges Gilson, Firko, and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-2288-21.

Douglas M. Alba argued the cause for appellants (Kennedy Vuernick, LLC, attorneys; Douglas M. Alba and Gabrielle H. Pohlman, of counsel and on the briefs).

Jonathan L. Triantos argued the cause for respondents Pennsauken Spine and Rehab, PC, Dominic Mariani, D.C., Mark A. Bolinger, D.C., and Michael Ross, D.C. (Brown & Connery LLP, attorneys; William M. Tambussi and Jonathan L. Triantos, on the briefs).

Michael Midlige argued the cause for respondents Central Jersey Orthopedic and Neurodiagnostic Group, John L. Hochberg, M.D., Colleen Mulryne, D.C., Bradley A. Bodner, D.O., and Joseph Kepko, D.O.

2

(Midlige Richter, LLC, attorneys; Michael Midlige, of counsel and on the briefs).

Jeffrey S. Posta, Deputy Attorney General, argued the cause for amicus curiae the New Jersey Department of Banking and Insurance and the New Jersey Office of the Insurance Fraud Prosecutor (Matthew J. Platkin, Attorney General, attorney; Janet Greenberg Cohen and Adedayo Adu, Assistant Attorneys General, of counsel; Jeffrey S. Posta, on the brief).

PER CURIAM

Plaintiffs Allstate Fire & Casualty Insurance Company, Allstate Indemnity Company, Allstate Insurance Company, Allstate New Jersey Insurance Company, Allstate New Jersey Property & Casualty Insurance, and Allstate Property & Casualty Insurance Company (plaintiffs or Allstate) appeal from a June 28, 2024 order, which dismissed counts ten through fifteen of Allstate's second amended complaint against defendants Central Jersey Orthopedic and Neurodiagnostic Group, LLC, John Hochberg, M.D., Colleen Mulryne, D.C., Bradley A. Bodner, D.O., and Joseph Kepko, D.O. (the CJON defendants), and compelled those claims to be arbitrated under the Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A. 39:6A-1.1 to -35, as personal injury protection (PIP) claims.

In Allstate N.J. Ins. Co. v. Carteret Comprehensive Med. Care, PC, 480 N.J. Super. 566 (App. Div. 2025), certif. granted, 261 N.J. 165 (July 1, 2025)

3

A-3819-23

(Carteret), we held that claims under the Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 to -30 (the Fraud Act), are not subject to PIP arbitration. Carteret controls the outcome of this appeal. Because counts ten through fifteen in this matter assert claims under the Fraud Act or related complex common law fraud claims, the trial court erred in dismissing those claims and compelling them to PIP arbitration. Accordingly, we reverse and vacate the June 28, 2024 order and remand this matter so that Allstate can pursue its Fraud Act and related claims in the Law Division, with the right to a jury trial.

I.

Plaintiffs are six related insurance companies, which provide no-fault automobile insurance policies in New Jersey, under which insureds can recover PIP benefits if they are injured in an automobile accident. When insureds receive medical treatment, they may, and typically do, assign their PIP benefits to their medical providers. The medical providers can then seek payment from insurers, like Allstate. See N.J.S.A. 39:6A-4 (allowing PIP benefits to be assigned "to a provider of service benefits"). If there is a dispute regarding individual medical expense claims, AICRA requires those disputes to be resolved in PIP arbitration. Carteret, 480 N.J. Super. at 580 (explaining that AICRA requires insureds to adopt an insurance policy with an arbitration

provision requiring disputes for PIP benefits to be resolved through arbitration) (citing N.J.A.C. 11:3-4.7B(b)); see also N.J.S.A. 39:6A-5.1.

On November 4, 2021, plaintiffs filed a complaint against the CJON defendants, Pennsauken Spine and Rehab, PC, Dominic Marini, D.C., Mark A. Bolinger, D.C., and Michael Ross, D.C. (the Pennsauken defendants), and Wilfredo S. Castro. In essence, plaintiffs contended that defendants had engaged in several coordinated schemes, including schemes involving kickbacks and using "runners," to fraudulently obtain insurance benefits, including PIP benefits. Plaintiffs asserted fifteen causes of action, including eight counts that expressly alleged defendants had violated the Fraud Act and other counts that asserted defendants had engaged in fraud and kickback schemes.

The CJON defendants, the Pennsauken defendants, and Castro, an alleged "runner," all filed answers. The Pennsauken defendants also filed counterclaims, alleging violations of N.J.S.A. 39:6A-5 and N.J.A.C. 11:3-4.7, as well as tortious interference. Thereafter, plaintiffs amended their complaint to add additional defendants, including two law firms and an attorney from one of those law firms (the attorney defendants).

Meanwhile, in February 2022, the Pennsauken defendants moved to dismiss and compel all of plaintiffs' claims against them to PIP arbitration. On

5

August 3, 2023, the trial court entered an order granting the Pennsauken defendants' motion in part and denying it in part. The court supported its decision with a letter opinion.

The trial court decided to "bifurcate the claims" by dismissing the claims, which the court reasoned had arisen from PIP benefits and compelling those claims to PIP arbitration. The trial court retained the claims it determined asserted violations of the Fraud Act, as well as the claims that alleged runner and kickback schemes. Thus, in the August 3, 2023 order, the court dismissed counts one, four, five, six, seven, eight, and nine, and directed those claims to be resolved in PIP arbitration. The trial court retained counts two and three because "they state a claim for violation of the [Fraud Act] due to an alleged kickback and runner scheme." Finally, the court dismissed the Pennsauken defendants' counterclaim under N.J.S.A. 39:6A-5.

Plaintiffs moved for reconsideration, but the trial court denied that motion. Plaintiffs also moved for leave to appeal, which we denied. That decision was an error because an order compelling arbitration is appealable as of right. R. 2:2-3(b)(8).

In December 2023, plaintiffs moved for leave to file a second amended complaint to add three new counts (sixteen through eighteen) against the

Pennsauken defendants and the CJON defendants. The CJON defendants opposed the motion, but in an order dated March 15, 2024, the trial court granted plaintiffs' motion, in part by allowing them to assert two new counts. In that regard, the trial court allowed plaintiffs to add counts seventeen and eighteen but did not allow count sixteen.

On March 20, 2024, plaintiffs filed their second amended complaint, which excluded the counts previously dismissed (counts one, and four through nine), and added two new counts against the Pennsauken and CJON defendants. Accordingly, the second amended complaint alleges ten causes of actions, under counts designated two, three, ten, eleven, twelve, thirteen, fourteen, fifteen, seventeen, and eighteen.

Specifically, plaintiffs' second amended complaint alleges the following causes of action: (1) count two, asserts unjust enrichment based on quasi-contract, and alternatively equitable fraud and conspiracy to commit equitable fraud in connection with the Pennsauken defendants' runner and kickback schemes; (2) count three, alleges violations of the Fraud Act in connection with the Pennsauken defendants' runner and kickback scheme; (3) count ten, seeks a declaratory judgment that the CJON defendants maintained an unlawful practice structure, designed to defraud plaintiffs; (4) count eleven, asserts unjust

7

enrichment based on quasi-contract, and alternatively equitable fraud and conspiracy to commit equitable fraud in connection with the CJON defendants' unlawful practice structure; (5) count twelve, alleges violations of the Fraud Act in connection with the CJON defendants' unlawful practice structure; (6) count thirteen, seeks a declaratory judgment that the CJON defendants engaged in an unlawful, fraudulent medical testing and billing scheme; (7) count fourteen, asserts unjust enrichment based on quasi-contract, and alternatively equitable fraud and conspiracy to commit equitable fraud, in connection with the CJON defendants' fraudulent medical testing and billing scheme; (8) count fifteen, alleges violations of the Fraud Act in connection with the CJON defendants' fraudulent medical testing and billing scheme; (9) count seventeen, asserts a claim for unjust enrichment based on quasi-contract and, alternatively equitable fraud and conspiracy to commit equitable fraud, based upon the Pennsauken and CJON kickback and unlawful referral scheme; and (10) count eighteen, alleges a claim for violation of the Fraud Act based upon the Pennsauken and CJON kickback and unlawful referral scheme.[1]

---

[1] Counts one and four though nine assert: (1) count one, seeks a declaratory judgment that the Pennsauken defendants violated the law by using a "runner"/patient broker to refer patients in exchange for kickbacks; (4) count four, seeks a declaratory judgment that the Pennsauken defendants violated the

Plaintiffs' causes of action, as asserted in the original complaint, the amended complaint, and the second amended complaint, all arise from common alleged facts. The assertions in the complaints describe several interrelated, overlapping, and sometimes coordinated schemes, perpetrated by defendants to fraudulently obtain insurance benefits from plaintiffs, including PIP benefits and bodily injury benefits, in violation of the Fraud Act.

In their statement of damages, plaintiffs claim that between 2015 and October 2021, they were induced to pay approximately $1,056,227.36 to the Pennsauken defendants in PIP medical expense benefits on behalf of Allstate PIP claimants, and $196,670 to the CJON defendants. Plaintiffs further alleged they paid at least $1,779,105.25 to Allstate bodily injury claimants through the

---

law through a fraudulent billing scheme; (5) count five, unjust enrichment based on quasi-contract, and alternatively equitable fraud and conspiracy to commit equitable fraud in connection with the Pennsauken defendants' fraudulent billing scheme; (6) count six, violations of the Fraud Act in connection with the Pennsauken defendants' fraudulent billing scheme; (7) count seven, seeks a declaratory judgment that the Pennsauken defendants violated the law through a scheme of concealing patients' medical histories; (8) count eight, unjust enrichment based on quasi-contract, and alternatively equitable fraud and conspiracy to commit equitable fraud in connection with the Pennsauken defendants' concealment of patients' medical histories; (9) count nine, violations of the Fraud Act with respect to the Pennsauken defendants' concealment of patients' medical histories.

A-3819-23

attorney defendants. Further, plaintiffs noted that its investigation was ongoing, and its damage claims probably would increase.

The Pennsauken defendants moved to dismiss the second amended complaint or, alternatively stay the action pending the outcome of the Carteret appeal. The attorney defendants similarly moved to dismiss or, alternatively for a stay. The CJON defendants moved to dismiss the entire second amended complaint, or alternatively dismiss certain counts of the second amended complaint, based upon the trial court's prior ruling in August 2023. Plaintiffs opposed the motions.

The attorney defendants, the Pennsauken defendants, Castro, and the CJON defendants, all also filed answers to the second amended complaint. Pennsauken Spine and Rehab, PC, also reasserted its second amended counterclaim.

On June 28, 2024, the court heard argument on the various motions. As relates to the present appeal, the court entered an order granting, in part, the motion to dismiss filed by the CJON defendants, and dismissed counts ten through fifteen of the second amended complaint in favor of PIP arbitration. The court did not engage in a detailed analysis; rather it relied on the reasoning of its August 3, 2023 decision, which had dismissed certain counts against the

Pennsauken defendants. In other words, the trial court reasoned that counts ten through fifteen, which assert claims against the CJON defendants, were like counts one and four through nine, which assert claims against the Pennsauken defendants. Additionally, the trial court denied the other motions to dismiss.

On August 6, 2024, plaintiffs filed a notice of appeal from the June 28, 2024 order, as permitted under Rule 2:2-3(b)(8).

II.

Plaintiffs argue the trial court erred in compelling counts ten through fifteen to PIP arbitration because: (1) that action was effectively "rule making" and violated the Administrative Procedure Act, N.J.S.A. 52:14B-1 to -31; (2) it violated their constitutional right to a jury trial of their Fraud Act claims; (3) defendants had waived their right to compel arbitration by litigating this matter for three years before moving to compel arbitration; and (4) the trial court's ruling was inconsistent with judicial precedent.

Amici, the New Jersey Department of Banking and Insurance and the New Jersey Office of the Insurance Fraud Prosecutor, support plaintiffs' positions. They add that the trial court's decision is contrary to our holding in Carteret and would severely harm the public if insurance fraud claims under the Fraud Act were compelled to PIP arbitration.

11

The CJON defendants, in opposition, counter that plaintiffs were the ones who waived their right to appeal the June 28, 2024 order. They also contend that (1) they did not waive their right to compel arbitration; (2) plaintiffs did not raise the rule-making argument before the trial court, and we should not consider it; and (3) the trial court properly dismissed counts ten through fifteen. The Pennsauken defendants add that the trial court also properly dismissed and compelled arbitration of counts one and four through nine.

We begin by analyzing defendants' procedural arguments, which we hold lack merit. We then analyze counts ten through fifteen and determine that they do involve claims under the Fraud Act, as well as related fraud and quasi-contract claims. Accordingly, we hold that those claims are not subject to PIP arbitration and the trial court erred in dismissing those claims. Finally, on remand, we point out that the trial court will need to re-analyze its decision dismissing counts one and four through nine of plaintiffs' complaint.

A. Defendants' Procedural Arguments.

The Pennsauken defendants contend that plaintiffs waived their right to appeal from the June 28, 2024 order because they did not oppose that motion and they effectively "consented" to the dismissal of those claims. That argument is based on a mischaracterization of the record.

12

Plaintiffs opposed the CJON defendants' motion to dismiss counts ten through fifteen of the second amended complaint. At argument before the trial court, counsel for plaintiffs candidly acknowledged that if the trial court used the same reasoning it had applied in granting the Pennsauken defendants' motion to dismiss in August 2023, then the court was likely to also grant the CJON defendants' motion.

Accordingly, when the trial court dismissed counts ten through fifteen, it did so over plaintiffs' objection and not with plaintiffs' consent. We therefore reject defendants' arguments that plaintiffs lacked standing or waived their right to appeal from the June 28, 2024 order.

We also point out that the June 28, 2024 order is appealable as of right under Rule 2:2-3(b)(8), as an order "compelling or denying arbitration[.]" Moreover, the New Jersey Supreme Court has clarified that when certain claims are compelled to arbitration but other claims are retained in the Law Division, the order compelling arbitration is still appealable as of right. See GMAC v. Pittella, 205 N.J. 572, 574-75, 585 (2011); see also Bell Tower Condo Ass'n v. Haffert, 423 N.J. Super. 507, 518 n.3 (App. Div. 2012) (explaining that an order denying or compelling arbitration is still appealable as of right even if there are other claims that were not dismissed and are still pending in the trial court).

13

B. Counts Ten Through Fifteen.

Appellate courts review orders compelling arbitration under a de novo standard. Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 131 (2020). We also review de novo a trial court's interpretation of statutes. Allstate N.J. Ins. Co. v. Lajara, 222 N.J. 129, 139 (2015). The primary issue presented in this appeal is whether claims of insurance fraud under the Fraud Act can be compelled to PIP arbitration under AICRA.

In Carteret we held that claims under the Fraud Act and related tort or statutory claims, including complex fraud and kickback claims, are not subject to PIP arbitration. 480 N.J. Super. at 586. In that regard, we explained "that complex fraud claims rooted in tort law do not fall within the ambit of PIP arbitration under AICRA, which is designed for disputes over the 'recovery of medical expense benefits.'" Ibid. (quoting N.J.S.A. 39:6A-5.1(a)). In reaching that conclusion, we reviewed and harmonized AICRA and the Fraud Act. Id. at 585. We then explained:

> PIP arbitration is limited to disputes "regarding the recovery of" PIP benefits. N.J.S.A. 39:6A-5.1(a). Thus, it is suited for disputes of whether an insured or an assignee should receive coverage for medical expenses and, if so, in what amount. The Fraud Act, by contrast, has the goal of eliminating "'a broad range of fraudulent conduct.'" [Lajara, 222 N.J. at 143 (quoting Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 172

14

(2006))]. Moreover, compelling Fraud Act claims to PIP arbitration would impede N.J.S.A. 17:33A-7(d), which expressly provides: "Upon receipt of notification of the filing of a claim by an insurer, the commissioner may join in the action for the purpose of seeking judgment for the payment of a civil penalty authorized under section 5 of this act." The same rationale applies to RICO claims. Therefore, we conclude claims under the Fraud Act and RICO do not fall within the ambit of PIP arbitration under AICRA.

[Ibid.]

Consequently, the issue on this appeal is whether counts ten through fifteen allege claims of violations of the Fraud Act and complex common law claims of fraud or unjust enrichment arising out of fraudulent schemes. Based on our de novo review, we hold that they do.

In count ten of the second amended complaint, plaintiffs allege that the CJON defendants conspired to provide diagnostic testing services such as EMGs and NCVs to patients, including Allstate claimants, while maintaining a practice structure that did not lawfully permit the performance of those services. Plaintiffs further alleged that the CJON defendants concealed the unlawful practice structure when submitting bills, medical records, and reports to plaintiffs, with an intent to mislead and defraud plaintiffs into paying for healthcare services purportedly provided to Allstate claimants.

15

Plaintiffs also assert that these practices violated applicable statutes and regulations governing the provision of health care services in New Jersey, including N.J.A.C. 13:35-2.6, as well as the Fraud Act, and plaintiffs had no obligation to make any payments for medical services that were not rendered in accordance with qualifying regulations or statutes governing the provision of those services.

In count eleven, plaintiffs allege the CJON defendants had been unjustly enriched because of their unlawful practice structure, based upon a theory of quasi-contract; alternatively, they allege the CJON defendants had committed equitable fraud, or conspired to commit equitable fraud, through their unlawful practice structure scheme. They contend that the CJON defendants wrongfully received payments of PIP medical benefits, for services purportedly rendered to Allstate claimants, notwithstanding that they were not entitled to such payments based upon their maintenance of an unlawful practice structure, which they conspired to conceal from plaintiffs.

In count twelve, plaintiffs allege the CJON defendants engaged in a pattern of violating the Fraud Act, N.J.S.A. 17:33A-4, by making false and misleading representations to plaintiffs about the lawfulness of their practice structure, in bills, reports, and medical records submitted in support of claims

for payment for healthcare services, while CJON's practice structure disqualified the CJON defendants from receiving payments for the medical expense benefits.

In count thirteen, plaintiffs assert that for the purpose of fraudulently generating revenue the CJON defendants engaged in a fraudulent EDX testing scheme, by billing for the performance of exams and EDX testing on Allstate claimants, notwithstanding that the testing was not clinically supported, was not performed to obtain an accurate diagnosis or to recommend or develop a course of treatment, and was not rendered in accordance with the applicable statutes and regulations governing those services. Plaintiffs further alleged that the CJON defendants used some of their fraudulently generated revenue to pay kickbacks, in furtherance of the CJON kickback scheme.

In count fourteen, plaintiffs contend the CJON defendants were unjustly enriched because of their fraudulent EDX testing scheme, based upon a theory of quasi-contract; alternatively, they allege the CJON defendants had committed equitable fraud, or conspired to commit equitable fraud, through their fraudulent EDX testing scheme. They contend the CJON defendants wrongfully received payments of PIP medical benefits for services purportedly rendered to Allstate claimants, notwithstanding that they were not entitled to those payments because

A-3819-23

the services allegedly rendered were rendered contrary to applicable statutes and regulations.

In count fifteen, plaintiffs assert the CJON defendants violated the Fraud Act, N.J.S.A. 17:33A-4, through their fraudulent EDX testing scheme, by submitting false and misleading bills, records, reports, and assignments in support of their claims for the payment of PIP medical expense benefits. As a remedy, plaintiffs seek declaratory and injunctive relief under the Fraud Act, including an award of treble damages and attorneys' fees incurred.

Our review of counts ten through fifteen convinces us that those counts allege complex schemes of insurance fraud, which assert violations of the Fraud Act and related common law fraud and unjust enrichment claims.[2] The claims alleged are not defenses to individual medical expenses in typical PIP claims or even groups of related PIP claims. Therefore, none of those counts should have been dismissed and compelled to PIP arbitration.

So, we vacate the June 28, 2024 order in this matter and remand with direction that those counts be reinstated and that plaintiffs be allowed to pursue

---

[2] Whether some of Allstate's claims have been over pled are issues that can be addressed by the parties following discovery in the Law Division.

A-3819-23

those counts in the Law Division, with a right to a jury trial. Given this holding we need not reach plaintiffs' other arguments for reversal.

C. Counts One and Four Through Nine.

The August 3, 2023 order is not currently before us on this appeal. At oral argument concerning the June 28, 2024 order, counsel for Allstate explained that they intend to move for reconsideration of the August 3, 2023 order if we reverse and vacate the June 28, 2024 order. In that regard, we note that plaintiffs have the right to file that motion and the trial court can reconsider the August 3, 2023 order because it is not a final order. See R. 4:42-2; see also Lawson v. Dewar, 468 N.J. Super. 128, 134 (App. Div. 2021) (citing Lombardi v. Masso, 207 N.J. 517, 536 (2011)) (explaining that an interlocutory decision is reviewable by the trial court at any time).

We further note that all parties essentially conceded that the trial court's rationale in dismissing counts ten through fifteen of the second amended complaint was based on its reasoning in dismissing counts one and four through nine. Indeed, the trial court expressly stated that it was relying on its decision from August 3, 2023 in granting the motion to dismiss and compel arbitration of counts ten through fifteen. Accordingly, on remand, if Allstate files a motion, we direct the trial court to reconsider its August 3, 2023 order. We further note

19

that any affected party would have the right to appeal that order when it is made. We expect, however, that any appeal will be consistent with our decision in this matter and in <u>Carteret</u>.

## III.

The June 28, 2024 order is reversed and vacated. The matter is remanded with direction that the trial court allow plaintiffs to reinstate counts ten through fifteen of the second amended complaint and to pursue those claims with a right to a jury trial. On an appropriate motion, the trial court is also to reconsider its August 3, 2023 order.

Reversed, vacated, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division